# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-4100

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DEWAYNE LEWIS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:01-cr-67—**William C. Lee**, *Judge*.

———————

ARGUED APRIL 1, 2005—DECIDED APRIL 19, 2005

———————

Before EASTERBROOK, MANION, and ROVNER, *Circuit
Judges.*

EASTERBROOK, *Circuit Judge.* A jury convicted Dewayne
Lewis of possessing a firearm, despite a felony conviction
that made it unlawful for him to carry a gun. 18 U.S.C.
§922(g)(1). His defense at trial was that the two witnesses
who testified that they saw him armed were liars. The princ-
ipal witness was Shaquandra Williams, with whom Lewis
had lived off and on for years. After a quarrel, Williams
accused Lewis of threatening her with a gun. Her friend
Malikah Simpson corroborated the story. Lewis contends
that because enmity gave both witnesses incentives to lie,

and because Williams handed the gun to the police (so perhaps Lewis had not touched it; his fingerprints were not on the weapon), the jury should not have believed them. Maybe so; an oath to give "nothing but the truth" does not guarantee honesty. Yet an appellate court does not reassess credibility. Defense counsel thoroughly cross-examined the witnesses about their experiences with and attitudes toward Lewis, and the jurors must have grasped the possibility that they were inventing a tale. So, too, the jurors knew Lewis's position: That the gun had been in Williams's house, and out of Lewis's reach, on the day in question. But the proposition that the gun had been locked away was his version of events, not (as he would have it) an incontestable fact. Lewis depicts Williams as a jilted and jealous ex-lover rather than as a battered partner, which is how Williams described herself. Whether Williams and Simpson were honest is a subject that the Constitution commits to the jurors as finders of fact, rather than to a reviewing court.

Lewis contends that mistakes along the way may have influenced the verdict. For example, he contends that the district judge committed clear error when, before jury selection began, he read parts of the indictment to members of the venire. The indictment stated that Lewis had been convicted of a felony and sentenced to ten years' imprisonment. The jurors were bound to learn about this conviction—it was, after all, an element of the offense—but did not need to learn about the length of the sentence. By arrangement, the crime of which Lewis had been convicted (robbery) was kept from the jurors. See *Old Chief v. United States*, 519 U.S. 172 (1997). The agreement also provided that the fact of conviction, and the length of the sentence, could be revealed. Lewis later changed his mind and wanted the length of the sentence withheld, but when the judge mentioned the ten-year term counsel did not object. Appellate counsel (succeeding the lawyer who had represented Lewis at trial) tells us that it did not seem significant at the time, so no

one paid much attention. That's exactly why it cannot lead to reversal now. It is quite unlikely that this brief mention, which the potential jurors themselves may have missed, could have affected the outcome of a trial in which the issue, when joined, was the complaining witnesses' credibility rather than anything related to Lewis's prior conviction.

Lewis received a sentence of 70 months' imprisonment, from the range of 63 to 78 months applicable to a person with his offense and criminal history. Because the district court treated his robbery conviction as a "crime of violence" for the purpose of U.S.S.G. §2K2.1(a)(4)(A), his offense level was 20, six levels higher than would have been appropriate had the robbery been treated as a non-violent offense. Lewis contends that, because the jury did not evaluate the nature of his prior conviction, *United States v. Booker*, 125 S. Ct. 738 (2005), entitles him to a deduction of those six levels and a sentence in the resulting range of 33 to 41 months. Yet *Booker*'s rule is: "Any fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt*." Id.* at 756 (emphasis added). Criminal history is all about prior convictions; its ascertainment therefore is excluded by *Booker*'s own formulation and governed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998).

Even if the Court were to overrule *Almendarez-Torres* and eliminate the prior-conviction proviso, Lewis could not benefit. He waived any claim under the sixth amendment when he took advantage of *Old Chief* to prevent the jury from learning details about his prior conviction. A defendant cannot insist during trial that the jury be kept in ignorance yet demand after its end that he receive a lower sentence because the jury did not pass on the very issue that had been withheld at his request. See *Shepard v. United States*, 125 S. Ct. 1254, 1263 n.5 (2005) ("any defendant who feels

that the risk of prejudice is too high can waive the right to have a jury decide questions about his prior convictions.") (plurality opinion); *Blakely v. Washington*, 124 S. Ct. 2531, 2541 (2004) ("a defendant . . . may consent to judicial fact-finding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial.").

Still, the district judge made a non-constitutional error in evaluating the nature of Lewis's prior conviction. Recidivist enhancements depend on the crime of which the person has been convicted, not on the precise conduct that led to the conviction. See, e.g., *Shepard*, 125 S. Ct. at 1259-60 (opinion of the Court), and *Taylor v. United States*, 495 U.S. 575, 600-02 (1990). (*Shepard* and *Taylor* deal with the Armed Career Criminal Act, 18 U.S.C. §924(e). Their approach governs recidivist enhancements under the Sentencing Guidelines too. See *United States v. Shannon*, 110 F.3d 382, 384 (7th Cir. 1997) (en banc); *Bush v. Pitzer*, 133 F.3d 455, 457 (7th Cir. 1997).) That legal criteria ("what kind of crime is this?") rather than factual inquiries ("what did this person do when violating that statute?") identify a "crime of violence" is the principal reason why the proviso to *Booker* exists, as Part III of Justice Souter's opinion in *Shepard* explains. (Only four Justices joined Part III, but the three Justices who dissented in *Shepard* concluded that recidivist enhancements are unproblematic under the sixth amendment, so in practical effect Part III speaks for the Court.)

Guideline 4B1.2, which defines "crime of violence" for purposes of the enhancement Lewis received under §2K2.1 (see Application Note 1 to that section), says that the term includes any offense that "involves conduct that presents a serious potential risk of physical injury to another" (§4B1.2(a)(2)) or that has as an element "the use, attempted use, or threatened use of physical force against the person of another" (§4B1.2(a)(1)). This definition closely tracks the one in 18 U.S.C. §16. See *Bazan-Reyes v. INS*, 256 F.3d 600,

609-12 (7th Cir. 2001). Lewis's prior conviction for robbery, in violation of Ind. Code 35-42-5-1, is a "crime of violence" under both parts of this definition. Robbery entails taking property from the person of another by force or threat and so is a crime of violence under subsection (1). (Indiana expresses this as "using or threatening the use of force on any person" or "putting any person in fear". The "fear" in this formulation is fear of physical injury rather than of defamation; §35-42-5-1 is not a blackmail statute. See *Cross v. State*, 235 Ind. 611, 137 N.E.2d 32 (1956); *Rigsby v. State*, 582 N.E.2d 910, 912 (Ind. App. 1991).) Even if the offender uses a threat rather than actual force, the victim may retaliate or flee, and violence erupt; this risk makes robbery a crime of violence under subsection (2). We have held that, because of this risk, theft from a person always is a crime of violence. See *United States v. Howze*, 343 F.3d 919 (7th Cir. 2003). See also *Flores v. Ashcroft*, 350 F.3d 666 (7th Cir. 2003). Robbery, which entails force or fear rather than stealth ("theft from a person" includes pickpocketing), is readily classified as a crime of violence.

Instead of evaluating the elements of robbery under Indiana law, or the risks posed by robberies as a class, the district court stressed what Lewis was alleged to have done. The judge wrote that affidavits in the earlier prosecution "indicate that Lewis entered a jewelry store in Ft. Wayne, IN, armed with a short-barreled pump action shotgun, demanded that the store owner open and remove the contents of the store safe, and then fled with an amount of currency and jewelry." But why was the judge considering affidavits rather than the elements of, or risks ordinarily associated with, the crime of conviction? Lewis did not have an opportunity to contest the affiants' allegations. (He did not deny that this is what the affidavits said, but he did not admit that they accurately narrated the earlier events.)

*Shepard* and *Taylor* hold that the judge is "limited to examining the statutory definition, charging document, writ-

ten plea agreement, transcript of plea colloquy, and any explicit factual finding made by the trial judge to which the defendant assented.*" Shepard*, 125 S. Ct. at 1257 (opinion of the Court). Affidavits attached to an information as part of Indiana practice are not part of the "charging document" for this purpose. The affidavit is just a police report under oath, and *Shepard* holds that police reports may not be considered. The list in *Shepard* is designed to identify documents that illuminate *what crime* the defendant committed, which can be hard to pin down if one state statute defines both "violent" and "nonviolent" versions of a single offense. Using additional materials such as affidavits to ascertain *how* this person violated a statute departs from the categorical approach that *Shepard* and *Taylor* adopt.

Although it is tempting to treat the district judge's use of the affidavits as a trifle—after all, robbery *always* is a "crime of violence"—the line between categorical and person-specific classification is important. Sentencing in a felon-in-possession case must not turn into a reprise of the earlier prosecution, for practical reasons as well as the constitutional considerations limned in Part III of *Shepard*. The district judge may well have used the affidavit's allegations when deciding where in the range to sentence Lewis, which would misconceive the nature of a recidivist enhancement. What matters is the fact *of* conviction, rather than the facts *behind* the conviction. The United States does not argue that it would have been appropriate to use these affidavits to decide where in the range to sentence Lewis, if they were not appropriately used to classify his prior conviction.

The conviction is affirmed. The sentence is vacated and the case remanded for resentencing consistent with this opinion. When resentencing Lewis, the judge will treat the guidelines as advisory, per *Booker*'s remedial holding, and impose a reasonable sentence.

No. 03-4100 <span style="float:right">7</span>

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*