# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-3646

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

CURTIS BARNETT,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 03 CR 30170—**David R. Herndon**, *Judge*.

_____

ARGUED JUNE 15, 2005—DECIDED JULY 18, 2005

_____

Before POSNER, COFFEY, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. Curtis Barnett pleaded guilty to being a felon in possession of a gun and was sentenced to 15 months in prison. His plea reserved the right to appeal the denial of his motion to suppress evidence found in a search of his home. The question presented by the appeal, left open in *United States v. Knights*, 534 U.S. 112, 118, 120 n. 6 (2001); see also *United States v. Lifshitz*, 369 F.3d 173, 182 (2d Cir. 2004); *United States v. Brown*, 346 F.3d 808, 812 (8th Cir. 2003), is the validity of a blanket waiver of Fourth Amendment rights as a condition of probation.

Convicted in an Illinois state court of aggravated fleeing from police officers, criminal damage to state property, and damage to property (the first two of these crimes are felonies and the third can be either a felony or a misdemeanor, 625 ILCS 5/11-204.1; 720 ILCS 5/21-1,-4), Barnett had been sentenced to a year of "Intensive Probation Supervision" in lieu of prison. His lawyer acknowledged having bargained for this disposition, which Barnett preferred to a prison sentence. Among the conditions of probation set forth in the agreed decree (that is, the sentence pursuant to the plea bargain) that imposed them, Barnett was required to "submit to searches of [his] person, residence, papers, automobile and/or effects at any time such requests are made by the Probation Officer, and consent to the use of anything seized as evidence in Court proceedings."

*United States v. Knights*, *supra*, 534 U.S. at 118, 121, holds that, given such a waiver, the probation officer, in order to be authorized to search the probationer's home without his consent to the particular search, need have *at most* a reasonable suspicion that the search will turn up contraband or evidence of crime. The Court's reasoning was that the waiver had diminished the probationer's expectation of privacy to a point at which he could not insist on a higher threshold, such as probable cause. *Id.* at 119, 122. But as we said, the Court left open the question whether the waiver alone could justify the search.

Constitutional rights like other rights can be waived, provided that the waiver is knowing and intelligent, as it was here. Barnett didn't want to go to prison. He preferred to sacrifice the limited privacy to which he would have been entitled had he been on ordinary as distinct from intensive probation (as we'll see), just as convicted defendants prefer home confinement to confinement in a jail or prison even if the home confinement involves monitoring the defendant's

activities inside the home and thus invades his privacy. And since imprisonment is a *greater* invasion of personal privacy than being exposed to searches of one's home on demand, the bargain that Barnett struck was not only advantageous to him but actually more protective of Fourth Amendment values than the alternative of prison would have been. It was also advantageous to the government, which wouldn't have agreed to it otherwise.

Plea bargains are a form of contract, *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005); *United States v. Bradley*, 381 F.3d 641, 648 (7th Cir. 2004); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005), and like other contracts are presumed to make both parties better off and do no harm to third parties, and so they are enforceable and enforced. Nothing in the Fourth Amendment's language, background, or purpose would have justified forcing Barnett to serve a prison sentence rather than to experience the lesser restraint of probation. Nothing is more common than an individual's consenting to a search that would otherwise violate the Fourth Amendment, thinking that he will be better off than he would be standing on his rights. Often a big part of the value of a right is what one can get in exchange for giving it up. Here, given the alternative facing him of a prison sentence, Barnett gave up nothing.

Unless it matters that the consent was given not to a specific search but to any search over a specified interval of time. Barnett argues that to enforce such a blanket consent would invite abuse—for what if the probation officer decided to camp in Barnett's home and search him every five minutes? This argument ignores not only the alternative facing Barnett—the even greater deprivation of privacy entailed by most forms of imprisonment, though this depends on the specific rules and conditions of the particular

prison—but also that contracts (and remember that the plea bargain, containing the consent to searches, is to be interpreted as a contract) contain implicit as well as explicit terms. *Haslund v. Simon Property Group, Inc.*, 378 F.3d 653, 655 (7th Cir. 2004); *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994); *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1198 (7th Cir. 1987); *Eskra v. Provident Life & Accident Ins. Co.*, 125 F.3d 1406, 1415-16 (11th Cir. 1997). Especially implicit terms necessary to head off absurdities. E.g., *Bank of America v. Moglia*, 330 F.3d 942, 946 (7th Cir. 2003). "[A] contract will not be interpreted literally if doing so would produce absurd results, in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek." *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 860 (7th Cir. 2002); see also *Nelson v. Schellpfeffer*, 656 N.W.2d 740, 743 (S.D. 2003); *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 96 (3d Cir. 2001).

The purpose of the blanket waiver in this case was not to permit probation officers to harass probationers, but to excuse the officers from having to justify a search by establishing that it was based on probable cause, suspicion, or some other standard that might invite litigation. It is a reasonable assumption that the "contract" implicitly forbids—equivalently, the waiver of Fourth Amendment rights does not extend to—searches that have no possible law-enforcement objective, or that so far exceed any legitimate enforcement needs as to compel an inference that the purpose and only effect were harassment. *Restatement (Second) of Contracts* § 203 (1981). "There is no novelty in interpreting contractual language in light of common sense." *McElroy v. B.F. Goodrich Co.*, 73 F.3d 722, 726-27 (7th Cir. 1996). Barnett's fear that he might be subjected to continual, harassing searches is chimerical.

The probation office's policy manual states that "to search an individual's home or auto, the officer must have some reasonable suspicion to suspect a violation of probation or a crime is being committed or has been committed." Barnett argues that this provision should be considered an implicit term of his probation. But it is apparent from the caption of his probation decree—"Conditions of *Intensive* Probation Supervision"—that he was being subjected to restrictions that went beyond what the policy manual provides for ordinary probation. He argues that the inconsistency between the search provisions in the manual and in the decree makes his "contract" indefinite and it therefore should not be enforced. A contract can be denied enforcement by virtue of indefiniteness. E.g., *Baker O'Neal Holdings, Inc. v. Massey*, 403 F.3d 485, 488 (7th Cir. 2005); *Haslund v. Simon Property Group, Inc.*, *supra*, 378 F.3d at 655; *Echols v. Pellullo*, 377 F.3d 272, 275 (3d Cir. 2004). But in such a case the contract is rescinded, meaning that the parties are put back in the positions they would have occupied had there never been a contract. *United States v. Cook*, *supra*, 406 F.3d at 488; *United States v. Bradley*, *supra*, 381 F.3d at 648; *Griggs v. E.I. DuPont de Nemours & Co.*, 385 F.3d 440, 447 (4th Cir. 2004). So Barnett's bargained-for probation would be down the drain and presumably (though this would depend on particulars of state law that we have not investigated) he would be sent back to the state court for resentencing—and the new sentence might be a prison term tacked on to his 15-month federal term. *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005); *United States v. Wagner*, 103 F.3d 551, 552 (7th Cir. 1996); *United States v. Moulder*, 141 F.3d 568, 571 (5th Cir. 1998); *United States v. Caldwell*, 88 F.3d 522, 526 (8th Cir. 1996). He clearly doesn't want that and so in response to a question from the bench told us that he was abandoning the argument.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*