# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-4175

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JEREMY D. HAGENOW,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 03 CR 134—**Robert L. Miller, Jr.,** *Chief Judge.*

_____

ARGUED JUNE 3, 2005—DECIDED AUGUST 31, 2005

_____

Before CUDAHY, POSNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Jeremy Hagenow filed a motion
to suppress evidence, including several firearms, seized
during a search of his home. The district court ruled that in
light of the Supreme Court's decision in *United States v.
Knights,* 534 U.S. 112 (2001), officers needed
only reasonable suspicion that Hagenow was engaged in
criminal activity in order to conduct the search because he
had signed a waiver of his search and seizure rights while
on probation. Finding that reasonable suspicion existed in
this case, the district court denied the motion to suppress,
and a jury subsequently convicted Hagenow of being a felon
in possession of a firearm. He appeals his conviction and
sentence. Because the district court correctly denied

Hagenow's motion to suppress, we affirm his conviction. However, we remand to the district court for resentencing as the court improperly considered an affidavit when determining the nature of Hagenow's prior conviction for criminal confinement. In addition, Hagenow should not have received a criminal history point for his prior conviction for possessing a police scanner.

## I. BACKGROUND

As part of his sentence for an August 2000 criminal confinement conviction, an Indiana state court placed Jeremy Hagenow on probation. When he was placed on probation, Hagenow signed a document that read in part: "You shall waive any and all rights as to search and seizure during your period of probation, and submit to search of your person or property by any police officer if a search is requested by a probation officer of this court." His conditions of probation also included a prohibition on owning or possessing firearms and dangerous weapons.

In July 2003, while still on probation, Hagneow was charged with illegally shooting a deer with a shotgun. After learning of this charge, Robert Schuster, Hagenow's probation officer, asked Hagenow to submit to a lie detector test. The examiner reported to Schuster that Hagenow was deceptive in responding "no" when asked if he had shot a deer with a shotgun. As a result, the local prosecutor's office requested an investigation as to whether Hagenow, a felon on probation, possessed a shotgun, and law enforcement officials contacted a confidential informant who knew Hagenow and had provided information in the past that led to the conviction of other defendants.

The confidential informant told LaPorte County Officer Joseph Morrison that while outside Hagenow's home in early July of 2003, he saw a handgun in Hagenow's possession, which Hagenow stated was a .357 revolver. The same

confidential informant also told Morrison that in late July or early August of 2003, he was again at Hagenow's home when he saw him get out of a pickup truck carrying a long gun case. Hagenow told the informant that the case contained a shotgun that he had used earlier that day at his father's residence. The informant also told Morrison that on August 19, 2003, the informant was inside Hagenow's home when Hagenow showed him a 12 gauge shotgun. In addition, when the informant inquired about the revolver he had seen on a previous visit, Hagenow replied that he still had it.

Two days later, Officer Morrison testified to these facts at a state court hearing in conjunction with an application for a search warrant for Hagenow's home. The court found probable cause and issued a search warrant authorizing the search of Hagenow's residence for "(1) a 12 Gauge Shotgun; (2) a .357 Caliber Revolver; (3) any and all evidence relevant to the commission of a crime." On August 22, 2003, Officer Morrison, accompanied by Probation Officer Schuster and other officers, executed the warrant. Officers found a rifle and ammunition inside Hagenow's home. After Hagenow gave the officers the keys to his vehicles, the officers also found a handgun and ammunition parts in each of two trucks parked in the driveway. The searches did not produce a .357 handgun or 12 gauge shotgun.

Hagenow was charged with unlawfully possessing firearms and ammunition. The district court denied Hagenow's motion to suppress the firearms and ammunition. A jury convicted Hagenow of possessing ammunition, the rifle found in the spare bedroom, and one of the handguns found in one of the trucks. Using the 2004 version of the United States Sentencing Guidelines, the district court sentenced Hagenow to 57 months' imprisonment. Hagenow now appeals.

## II.  ANALYSIS

### A.  Motion to Suppress

Hagenow first contends the district court erred when it denied his motion to suppress firearms and ammunition seized during the search of his home and vehicle. In our review of a district court's denial of a motion to suppress, we review de novo all questions of law, including the existence of reasonable suspicion to believe that a crime has been committed. *United States v. Johnson*, 383 F.3d 538, 542 (7th Cir. 2004). We review findings of fact for clear error. *United States v. Banks*, 405 F.3d 559, 570 (7th Cir. 2005).

Hagenow argues that the state court improperly issued the search warrant because it was based on unreliable, stale information. In addition, he maintains, a warrant was necessary because probation officers should not be permitted to conduct a warrantless search of a probationer's property absent a valid regulatory scheme. The government, in contrast, contends that under *United States v. Knights*, 534 U.S. 112 (2001), if the officers had reasonable suspicion that Hagenow was engaged in unlawful activity, a warrantless search of his residence was authorized. In addition, the government maintains, the officers had reasonable suspicion here. We agree with the government that the search was proper.

The Supreme Court's decision in *Knights* forecloses Hagenow's argument that any possible infirmities in the search warrant rendered the search improper. The probationer in *Knights* had agreed in writing that while on probation, he would submit his "person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Knights*, 534 U.S. at 114. Reasoning that the probation condition to which the probationer had agreed

"significantly diminished" his reasonable expectation of privacy, the Court held that "no more than reasonable suspicion" was necessary to search the probationer's home. *Id.* at 121. Further, the Court made clear, when an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, a warrant is not necessary. *Id.* at 122.

Like the probationer in *Knights*, Hagenow signed a specific waiver of rights regarding searches during probation, agreeing to "waive any and all rights as to search and seizure" while on probation and to "submit to search of [his] person or property by any police officer if a search is requested by a probation officer." *Knights* made clear that the officers needed no more than reasonable suspicion to justify the search of his home while he was on probation.

"Reasonable suspicion amounts to something less than probable cause but more than a hunch," *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005), and exists when there is some "'objective manifestation' that a person is, or is about to be, engaged in prohibited activity." *Knox v. Smith*, 342 F.3d 651, 659 (7th Cir. 2003). Ultimately, a court's determination of reasonable suspicion "must be based on common-sense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

Here, both federal law and the conditions of Hagenow's probation prohibited him from possessing firearms. A confidential informant who had provided reliable information to law enforcement officials in the past reported that on three occasions in the two months before the search, the informant was at Hagenow's home when Hagenow showed him firearms. One of these instances, when Hagenow showed the informant a 12 gauge shotgun, occurred only three days before the August 22, 2003 search. Hagenow also told the informant that day that he still possessed a

revolver. In addition, the probation officer knew that Hagenow had recently failed a lie detector test after he was charged with shooting a deer with a shotgun. Under these circumstances, we agree with the district court and the government that there was reasonable suspicion that Hagenow unlawfully possessed firearms at his residence, thereby justifying the search of his home.

Moreover, we recently addressed a question left open by *Knights*—whether a waiver like the one Hagenow signed "so diminished, or completely eliminated, [a probationer's] reasonable expectation of privacy (or constituted consent) that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." *Knights*, 534 U.S. at 120 n.6. In *United States v. Barnett*, 415 F.3d 690 (7th Cir. 2005), we considered an agreement by a probationer to "submit to searches of [his] person, residence, papers, automobile and/or effects at any time such requests are made by the Probation Officer, and consent to the use of anything seized as evidence in Court proceedings." 415 F.3d at 691. We held that this blanket waiver of Fourth Amendment rights as a condition of probation—a waiver similar to that signed by Hagenow—was enforceable, and that the existence of such a waiver alone justified the search of the probationer's home. *Id.* at 691-92.

Finally, the waiver Hagenow signed as a condition of his probation forecloses his attempt to suppress the evidence recovered during the search of his home, and the *Griffin v. Wisconsin*, 483 U.S. 868 (1987), "special needs" doctrine does not apply here. In *Griffin*, the Supreme Court upheld the warrantless search of a probationer's residence conducted pursuant to a Wisconsin regulation permitting any probation officer to search a probationer's home as long as there were "reasonable grounds" to believe there was contraband inside. *Id.* at 876. The Court held that a state's

operation of its probation system presented a "special need" for the exercise of supervision to assure that probation restrictions were observed. *Id.*

Relying on *Griffin,* Hagenow argues that a probation officer cannot conduct a warrantless search of a probationer's property absent a valid regulatory scheme, and that no "special need" exists here. This argument is unsound. The *Knights* Court explicitly rejected as "dubious logic" the argument that a warrantless search of a probationer's home satisfies the Fourth Amendment only if it is a "special needs" search, stating that it runs contrary to *Griffin*'s express statement that its "special needs" holding made it "unnecessary to consider whether" warrantless searches of probationers were otherwise reasonable under the Fourth Amendment. *Knights*, 534 U.S. at 117-18 (citing *Griffin*, 483 U.S. at 878). Because Hagenow signed a waiver agreeing to submit to searches while on probation, this case falls under *Knights* and its progeny, not *Griffin*, and the "special needs" test does not apply.

### B.   "Crime of Violence" Enhancement

Hagenow also takes issue with the sentence he received, a sentence imposed before the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). Hagenow first contests the district court's determination that his prior conviction for criminal confinement in Indiana state court constitutes a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A). This determination increased Hagenow's offense level from level 12 to level 20, thereby increasing his sentence. *See* U.S.S.G. § 2K2.1(a)(4)(A) (setting base offense level at 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense" and no other provision applies to establish higher base offense level).

Citing *Booker*, Hagenow contends that his Sixth Amendment right to a trial by jury was violated when a judge rather than a jury determined that his prior conviction constituted a "crime of violence." We rejected this challenge in *United States v. Lewis*, 405 F.3d 511, 513 (7th Cir. 2005), pointing to the Supreme Court's exclusion of prior convictions in *Booker*: "'Any fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt.'" *Lewis*, 405 F.3d at 513 (emphasis in *Lewis*) (citing *Booker*, 125 S. Ct. at 756).

However, we also recognized in *Lewis* that the district court in that case made a non-constitutional error when it evaluated whether the defendant's prior conviction constituted a "crime of violence" for the purposes of U.S.S.G. § 2K2.1(a)(4). *Lewis*, 405 F.3d at 513. The Guidelines define "crime of violence" in this instance to include any offense punishable by more than one year of imprisonment that "involves conduct that presents a serious potential risk of physical injury to another" or that has as an element "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2K2.1(a)(4), cmt. n.1; U.S.S.G § 4B1.2.

A conviction for criminal confinement under Indiana law is not necessarily a conviction for a "crime of violence." Indiana Code § 35-42-3-3 (2004) provides that

> (a) A person who knowingly or intentionally:
>
>> (1) confines another person without the other person's consent; or
>>
>> (2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another; . . .
>
> commits criminal confinement.

Criminal confinement does not contain the use, attempted use, or threatened use of physical force as a requisite element. In addition, criminal confinement under Indiana law does not necessarily involve conduct that presents a "serious potential risk of injury to another." One could, for example, confine another person without consent in a manner that, although unpleasant, does not present "a serious potential risk of physical injury" to the other.

Therefore, the district court had to look beyond the simple fact of conviction to determine whether Hagenow's prior conviction constituted a "crime of violence." *Shepard v. United States*, 125 S. Ct. 1254 (2005) and *Taylor v. United States*, 495 U.S. 575, 600-02 (1990) hold that in such a situation, a judge is " 'generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.' " *Shepard*, 125 S. Ct. at 1257 (opinion of the court); *see Lewis*, 405 F.3d at 514-15. We explained in *Lewis*, which like here involved a district court's evaluation of a prior conviction under Indiana law, that "[a]ffidavits attached to an information as part of Indiana practice are not part of the 'charging document' for this purpose." *Lewis*, 405 F.3d at 514-15. The documents listed in *Shepard*, we noted, are designed to help identify the crime that was committed, while affidavits shed light on *how* a defendant committed a crime. *Id.* at 515. An affidavit's content might impact where in the sentencing range a district court chooses to sentence a defendant, a result that would "misconceive the nature of a recidivist enhancement", as "[w]hat matters is the fact *of* conviction, rather than the facts *behind* the conviction." *Id.* Because the district court judge in *Lewis* had examined the affidavit in determining whether the prior conviction constituted a "crime of vio-lence," we remanded the case for resentencing. *Id.*

Here, the district court judge, acting without the bene-

fit of the *Shepard* or *Lewis* decisions, stated that he looked to the information and affidavit in support of probable cause in Hagenow's prior felony case in order to determine the nature of his criminal confinement conviction.[1] He then concluded that the prior conviction constituted a crime of violence. As the government acknowledges, we know after *Lewis* that examination of the affidavit was improper. We therefore vacate Hagenow's sentence and remand for resentencing in accordance with *Shepard* and *Lewis*.

### C.   Computation of Criminal History

We also agree with Hagenow that when he is resentenced, he should not receive a criminal history point for his prior misdemeanor conviction for possession of a police scanner, a class B misdemeanor under Indiana state law. The Sentencing Guidelines provide that when computing a defendant's criminal history, sentences for misdemeanor and petty offenses generally are counted, U.S.S.G. § 4A1.2(c), except as provided in U.S.S.G. §§ 4A1.2(c)(1) and 4A1.2(c)(2). Section 4A1.2(c)(1) states that fifteen enumerated offenses and "offenses similar to them," are counted only if: "(A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days" (a provision the parties agree does not apply), or "(B) the prior offense was similar to an instant offense." In addition, U.S.S.G. §4A1.2(c)(2) provides that the offenses it enumerates (hitchhiking, juvenile status offenses and truancy, loitering, minor traffic infractions (e.g., speeding), public intoxication, and vagrancy), as well as "offenses similar to them," are never counted in computing a defendant's criminal history.

---

[1]  The record in this appeal contains neither the information nor the affidavit from Hagenow's criminal confinement case.

Indiana Code § 35-44-3-12 provides that, with certain exceptions, an individual who knowingly or intentionally possesses a police radio commits the crime of unlawful use of a police radio. Because possession of a police scanner is not listed in the offenses contained in § 4A1.2(c), Hagenow's prior conviction must be counted in determining his criminal history unless it is "similar to" one of the enumerated offenses.

Although Indiana state law defines Hagenow's offense for possession of a police scanner, whether the offense is similar to an offense listed in § 4A1.2(c) is a matter of federal law. *See United States v. Roy*, 126 F.3d 953, 954 (7th Cir. 1997) (citation omitted). We have not adopted a formal test for determining whether an offense is "similar to" an enumerated offense. *Id.*; *United States v. Binford*, 108 F.3d 723, 726 (7th Cir. 1997). Instead, we have employed a "common sense" comparison. *Roy*, 126 F.3d at 954*; see also United States v. Harris*, 325 F.3d 865, 872 (7th Cir. 2003) (noting that comparing punishments imposed, perceived seriousness of the offense, elements of the offense, level of culpability, and indication of recurring conduct can be helpful in comparison). Our goal in this inquiry is to determine whether the prior conviction is "categorically more serious" than the listed offenses. *Harris*, 325 F.3d at 872 (citing *United States v. Booker*, 71 F.3d 685, 689 (7th Cir. 1995)) (quoting *United States v. Caputo*, 978 F.2d 972, 977 (7th Cir. 1992)). No published federal court decision has yet addressed whether possession of a police scanner is similar to one of the enumerated offenses.

Common sense tells us that the crime of possessing a police scanner under Indiana law is similar to offenses listed in § 4A1.2(c)(2). The United States Sentencing Commission did not attempt to survey every misdemeanor and petty offense in every state when it listed offenses in this section, nor did it purport to. Rather, the Commission promulgated guidelines stating that the

listed offenses and those "similar to" them were to be excluded from the criminal history computation, so long as, in the case of § 4A1.2(c)(2), the sentence did not exceed certain thresholds. The government's explanation of why a police scanner should be counted in determining a defendant's criminal history—"possessing a police scanner is a way for individuals engaged in criminal conduct to avoid being apprehended"—sounds remarkably like a description for hindering police or resisting arrest. *See, e.g.*, Ind. Code § 35-44-3-3(a)(2) (stating that a person commits misdemeanor resisting law enforcement when he or she "forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court").

The government has also not identified to us any quality about possessing a police scanner that makes it more serious than the enumerated crimes. *Cf. Roy*, 126 F.3d at 955 (finding marijuana use not "similar to" public intoxication because decision to use an illicit drug is more culpable and involves more criminal intent than overindulgence in non-controlled substance); *United States v. Dillon*, 905 F.2d 1024, 1039 (7th Cir. 1990) (finding prior conviction for resisting arrest and battery not "similar to" offenses listed in § 4A1.2(c)(1), where none of the listed offenses was similar to battery). We find it hard to believe that possessing a police radio is more serious than hindering or failing to obey a police officer, leaving the scene of an accident, furnishing false information to a police officer, resisting arrest, reckless driving, or contempt of court, all of which are enumerated in § 4A1.2(c)(2). A person commits misdemeanor resisting arrest in Indiana, for example, when that person "knowingly or intentionally forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer." Ind. Code § 35-44-3-3(a)(1). The Indiana Supreme Court has

held that one "forcibly resists" within the meaning of the statute when "strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993). In addition, misdemeanor resisting arrest in Indiana is a class A misdemeanor, carrying with it a punishment of up to one year in prison and a $5000 fine. Ind. Code §§ 35-44-3-3(a); 35-50-3-2. Hagenow's prior conviction, in contrast, was a class B misdemeanor with a lower maximum punishment of only 180 days in prison and a $1000 fine. Ind. Code §§ 35-44-3-12; 35-50-3-3. Common sense tells us that possessing a police scanner is not "categorically more serious" than resisting arrest, and if resisting arrest can be excluded from a defendant's criminal history, so should the mere possession of a police scanner.

The inclusion of a criminal history point for Hagenow's prior conviction for possessing a police scanner placed him in Criminal History Category IV and resulted in a sentencing range of 51 to 63 months. The district court selected a sentence at the middle of this range, 57 months. Had the conviction been properly excluded, Hagenow's criminal history would have placed him in Criminal History Category III, with a sentencing range of only 41 to 51 months. Therefore, even under the plain error standard of review the government advocates, Hagenow should not receive a criminal history point for his conviction for possessing a police scanner. *See United States v. Spears*, 159 F.3d 1081, 1088 (7th Cir. 1998) (improperly including prior conviction in criminal history computation that resulted in increase to defendant's sentence constituted plain error); *United States v. Wallace*, 32 F.3d 1171, 1174-75 (7th Cir. 1994).

### III.  CONCLUSION

For the foregoing reasons, Jeremy Hagenow's conviction is AFFIRMED. We VACATE his sentence and REMAND for resentencing in accordance with this opinion. The district court should resentence Hagenow in accordance with *United States v. Booker*, 125 S. Ct. 738 (2005).

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*