**IN THE COURT OF APPEALS OF IOWA**

No. 14-1929
Filed February 24, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ADYM RAY BARTH,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Nathan A.

Callahan, District Associate Judge.


        The defendant appeals his conviction for failure to comply with the sex

offender registry.  **AFFIRMED.**


        Roman Vald of LaMarca Law Group, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Kevin Cmelik and Kelli Huser,

Assistant Attorneys General, for appellee.


        Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Adym Barth was convicted for failure to comply with the sex offender registry, an aggravated misdemeanor, in violation of Iowa Code sections 692A.104 and 692A.111 (2013). On appeal, Barth contends the district court erred in denying his motion to suppress evidence allegedly obtained in violation of his federal and state constitutional rights. We review de novo a ruling on a motion to suppress evidence allegedly obtained in violation of constitutional rights. *See State v. Short*, 851 N.W.2d 474, 478 (Iowa 2014). We conduct "an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). "Each case must be evaluated in light of its unique circumstances." *State v. Baldon*, 829 N.W.2d 785, 789 (Iowa 2013) (internal quotation marks and citation omitted).

In 2010, Barth was convicted of sexual abuse in the third degree and sentenced to an indeterminate term of incarceration not to exceed ten years in prison. As part of his sentence, Barth was required to register with the sex offender registry. In 2013, Barth was placed on supervised probation after his sentence was reconsidered. He was required to complete the sex offender treatment program. In October 2013, Barth signed a Sex Offender Treatment Program Contract/Supervision Agreement. Among other things, the contract prohibited Barth from using his cellular phone and other devices to access the Internet for unapproved uses. The contract also required Barth to provide "Department of Correctional Services staff search and seizure privileges to confiscate these items." In February 2014, Barth entered into a probation

agreement. The probation agreement provided consent to "submit his person, property, place of residence, vehicle or personal effects to search at any time at the discretion of the Department of Correctional Services." In the probation agreement, Barth acknowledged and agreed that any such "search may occur with or without a search warrant or without an arrest warrant."

In June 2014, Barth attended a regular meeting with his probation officer, Officer Capelle. The day prior to the meeting, Officer Capelle received a voicemail message from an individual who had concerns regarding the defendant's conduct. Officer Capelle called the individual, who inquired about Barth's probation restrictions, including whether Barth was allowed to use the Internet, Facebook, or a cellular phone camera. The caller inquired whether Barth was allowed to have contact with minors. The caller stated Barth had been taking pictures with his camera phone. The following day, when Barth arrived for the probation meeting, Officer Capelle requested Barth's cellular phone, and Barth gave it to him. Another probation officer searched the phone and found Barth had accessed the Internet in violation of Barth's probation agreement. The search of the phone revealed Barth had downloaded pornographic content and had used several social media and communication applications to send and receive messages and photographs, including Facebook, Kik, MeetMe, and Snapchat.

Before confronting Barth regarding what was revealed in the search of the phone, Officer Capelle called Sergeant Steve Petersen at the Black Hawk County Sheriff's Office. Officer Capelle inquired whether Barth had registered his

Facebook account. Sergeant Petersen instructed Officer Capelle to obtain a written statement from Barth and instructed Officer Capelle to tell Barth to report to the sheriff's office. Officer Capelle then interviewed Barth regarding Barth's phone usage and obtained a signed statement from Barth. Among other things, Barth "admitted to PO Capelle that [Barth] activated his FACEBOOK account about two weeks ago after he had deactivated in the past." Officer Capelle instructed Barth to report to the sheriff's office, and Barth complied with Officer Capelle's instruction. Once there, Sergeant Petersen placed Barth in an interview room. Sergeant Petersen read Barth his *Miranda* warnings. Sergeant Petersen asked Barth if he understood his rights. Barth responded in the affirmative. Sergeant Petersen questioned Barth, and Barth confessed to using his cellular phone to access social media sites and communication applications. Petersen arrested Barth for a probation violation.

The State charged Barth with failure to comply with the sex offender registry, an aggravated misdemeanor, in violation of Iowa Code sections 692A.104 and 692A.111. Barth moved to suppress evidence obtained from the search of his cellular phone on the ground the warrantless search violated his right to be free from unreasonable searches and seizures as protected by the Fourth and Fourteenth Amendments to the Federal Constitution and article I, section 8 of the Iowa Constitution. Barth also moved to suppress the statements he gave to Officer Capelle and Sergeant Petersen on the ground the statements were obtained in violation of Barth's Fifth and Fourteenth Amendment rights. The district court denied the motion to suppress evidence. Following a trial on

the minutes, the district court found Barth guilty of the offense of failure to comply with the sex offender registry for failing to report the reactivation of his Facebook account.

We first address Barth's search and seizure claim. The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment is applicable to state actors by incorporation via the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 660 (1961). The text of Article I, section 8 of the Iowa Constitution is materially indistinguishable from the federal constitutional provision. Nonetheless, "while United States Supreme Court cases are entitled to respectful consideration, [Iowa courts] will engage in independent analysis of the content of [Iowa's] search and seizure provisions." *State v. Ochoa*, 792 N.W.2d 260, 267 (Iowa 2010).

Barth contends the Iowa Constitution provides greater protection than the Federal Constitution without specifying why or how. Regardless, Barth misstates the issue. Depending upon the particular issue, our precedents interpreting article I, section 8 may provide greater or lesser protection than cases interpreting the Fourth Amendment. While it is undoubtedly true that "the Supreme Court's jurisprudence regarding the freedom from unreasonable searches and seizures under the Fourth Amendment" is a floor and not a ceiling due to the operation of the Supremacy Clause, *Baldon*, 829 N.W.2d at 791, it is also undoubtedly true that the maxim applies only where the defendant asserts a

claim arising under the Fourth and Fourteenth Amendments. "The right question, is not whether a state's guarantee is the same as or broader than its federal counterpart as interpreted by the Supreme Court. The right question is what the state's guarantee means and how it applies to the case at hand. The answer may turn out the same as it would under federal law. The state's law may prove to be more protective than federal law. The state law also may be less protective. In that case the court must go on to decide the claim under federal law, assuming it has been raised." *Hulit v. State*, 982 S.W.2d 431, 437 n.11 (Tex. Crim. App. 1998) (quoting Hans A Linde, E Pluribus—Constitutional Theory and State Courts, 18 Ga. L. Rev. 165, 179 (1984)).

"Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by a search of a cigarette pack, a wallet, or a purse." *Riley v. California*, 134 S. Ct. 2473, 2488-89 (2014). "With all they contain and all they may reveal, they hold for many Americans the privacies of life." *Id.* at 2494-95. Thus, law enforcement officers must generally obtain a warrant prior to searching a cell phone. *See Riley*, 134 S. Ct. at 2494-95; *State v. Lacey*, No. 13-1898, 2015 WL 359249, at *2 (Iowa Ct. App. Jan. 28, 2015) (recognizing *Riley* prevents application of the search-incident-to arrest exception to the search of a cellular phone). "Warrantless searches are per se unreasonable if they do not fall within one of the well-recognized exceptions to the warrant requirement." *State v. Naujoks*, 637 N.W.2d 101, 107 (2001). Consent to search is a recognized exception to the warrant requirement. *See Baldon*, 829 N.W.2d at 791.

Consent, to be constitutionally valid, must be voluntary under the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

We have little trouble concluding that Barth consented to the search of his cellular phone and that the search of his cellular phone did not violate either the federal or state constitution. Barth twice provided written consent to the search of his personal effects. In October 2013, Barth entered into the "Sex Offender Treatment Program Contract/Supervision Agreement," which required Barth's consent to search his cellular phone. The 2014 probation agreement provided the same consent. Further, in prior meetings with Officer Capelle, Barth had provided his cellular phone to the department of correctional services for random searches. Finally, when Officer Capelle requested Barth's cellular phone, Barth relinquished the phone without objection. *See U.S. v. Stapleton*, 10 F.3d 582 (8th Cir. 1993) (holding officers reasonably relied on consent to examine a cellular phone where the owner of the phone remained silent when told of the search and its purpose and made no statements limiting the scope of the consent to search); *United States v. Coates*, 685 F. Supp. 2d 551, 556 (M.D. Pa. 2010) (denying motion to suppress where the defendant handed his cell phone to an officer).

Barth contends his consent was not voluntary because he was on probation and required to consent to the search of his phone. The Iowa Supreme Court has not directly resolved the question of whether a signed probation agreement consenting to prospective searches is valid consent. In *Baldon*, the court recognized a significant number of jurisdictions have concluded

a probationer can consent to prospective searches and/or waive search and seizure rights in a probation agreement. *See Baldon*, 829 N.W.2d at 792-93.[1] The court also noted "[s]ome courts have concluded probationers do not voluntarily consent to these search provisions." *Id.* at 793.[2] The *Baldon* court never reached the issue, however, because the question presented in that case related to parolee consent. In that case, the court ultimately concluded "a parole agreement containing a prospective search provision is insufficient evidence to establish consent. Such a contract reveals an absence of bargaining power on behalf of the parolee, rendering contract principles inadequate to entitle the state to enforce compliance of a search provision." *Id.* at 795, 802-03. The *Baldon* court intimated, however, that it would reach a different result with respect to probationers. *See id.* at 795 ("[P]robationers . . . maintain a vastly superior bargaining power than the parolees. Such a probationer has the choice of demanding a trial to seek his or her freedom, which many courts find gives rise to the type of bargaining power that renders probation agreements consensual.").

---

[1] Citing *United States v. Barnett*, 415 F.3d 690, 691–92 (7th Cir. 2005); *State v. Montgomery*, 566 P.2d 1329, 1330–31 (Ariz. 1977); *People v. Bravo*, 738 P.2d 336, 341 (Cal. 1987); *People v. Mason*, 488 P.2d 630, 634 (Cal. 1971); *Allen v. State*, 369 S.E.2d 909, 910 (Ga. 1988); *State v. Gawron*, 736 P.2d 1295, 1297 (Idaho 1987); *State v. Devore*, 2 P.3d 153, 156 (Idaho 2000); *People v. Absher*, 950 N.E.2d 659, 664–68 (Ill. 2011); *Rivera v. State*, 667 N.E.2d 764, 767 (Ind. Ct. App. 1996); *People v. Hellenthal*, 465 N.W.2d 329, 330 (Mich. Ct. App. 1991); *State v. Anderson*, 733 N.W.2d 128, 139 (Minn. 2007); *State v. Morgan*, 295 N.W.2d 285, 288–89 (Neb. 1980); *State v. Bollinger*, 405 A.2d 432, 438 (N.J. 1979); *State v. Mitchell*, 207 S.E.2d 263, 264 (N.C. Ct. App. 1974); *State v. Davis*, 191 S.W.3d 118, 122 (Tenn. Crim. App. 2006); *State v. Martinez*, 811 P.2d 205, 209 (Utah Ct. App. 1991); *Anderson v. Commonwealth*, 507 S.E.2d 339, 341 (Va. 1998).
[2] Citing *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265, 265 n.15 (9th Cir. 1975); *Grubbs v. State*, 373 So. 2d 905, 910 (Fla. 1979); *Commonwealth v. LaFrance*, 525 N.E.2d 379, 381 n.3 (Mass. 1988); *People v. Peterson*, 233 N.W.2d 250, 255 (Mich. Ct. App. 1975); *State v. Schlosser*, 202 N.W.2d 136, 139 (N.D. 1972); *Tamez v. State*, 534 S.W.2d 686, 692 (Tex. Crim. App. 1976).

The bargaining-power framework seems to be a legal fiction of little practical value. It cannot be said either a parolee or probationer has bargaining power, in any real sense, when the only option presented is incarceration or submission to supervision upon the terms demanded. We are unaware of any situation, in the real world, in which a parolee or probationer negotiated the terms of parole or probation. The concept of bargaining power is also inapt in Iowa, where the district court imposes sentence and the department of correctional services sets most, if not all, the terms and conditions of probation at some later date. In any event, this is the framework and distinction set forth in our case law, and we conclude that a probationer can consent to prospective warrantless searches in a probation agreement. *See, e.g.*, *Barnett*, 415 F.3d at 692 (finding waiver of Fourth Amendment rights by agreement to prospective warrantless searches as a term of probation); *State v. Cruz*, 174 P.3d 876, 878 (Idaho Ct. App. 2007) ("Idaho appellate courts have long-recognized that parolees and probationers have a diminished expectation of privacy and will enforce Fourth Amendment waivers as a condition of parole or probation.").

An additional consideration supports our conclusion Barth consented to the search of his cellular phone for non-investigatory purposes. Barth was participating in the sex offender treatment program. The "sex offender treatment program was established for bona fide rehabilitative purposes." *State v. Washington*, 832 N.W.2d 650, 660 (Iowa 2013). "Rehabilitation is a legitimate penological interest that must be weighed against [a probationer's] liberty." *Id.* Participation in the sex offender treatment program for rehabilitative purposes

"may impose difficult choices on defendants to serve a valid penological goal without crossing the line into unconstitutional compulsion." *Id.* Here, Barth entered into the Sex Offender Treatment Program Contract/Supervision Agreement, which required Barth's consent to search his cellular phone. The purpose of the consent to search was to allow the Department of Correctional Services to ensure Barth was not engaging in conduct that might otherwise be lawful (e.g., viewing pornography) but contrary to his rehabilitative goals.

Even if Barth had not consented to the search of his cellular phone, the search of his cellular phone was authorized by the special needs doctrine. *See Camara v. Mun. Court*, 387 U.S. 523, 535 (1967) (Blackmun, J., concurring) ("Only in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable, is a court entitled to substitute its balancing of interests for that of the Framers."). The controlling case with respect to Barth's federal claim is *Griffin v. Wisconsin*, 483 U.S. 868 (1987). In that case,

> the Court considered the special-needs doctrine in the context of a probationary search. In doing so, the basic application of the doctrine surfaced for the first time. *See Griffin*, 483 U.S. at 873. The Court acknowledged that "[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.' " *Id.* On the other hand, it recognized that "a State's operation of a probation system ... presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.* at 873–74. The conditions placed on the liberty of probationers "are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large," which requires and justifies the exercise of supervision to ensure the conditions of probation are followed. *Id.* at 875. The Court ultimately held that requiring a warrant would remove supervisory power from the probation officer

and place it in the warrant judge, interfere with quick responses to violations, and reduce the deterrent effect that the searches would create. *Id.* at 876. Even the dissent found probation supervision fell within a special-needs category to justify the examination of the reasonableness of probation-related searches and ultimately concluded the threshold probable-cause requirement for a warrant should be lowered because supervision advances rehabilitation "by allowing a probation agent to intervene at the first sign of trouble." *Id.* at 881–83 (Blackmun, J., dissenting).

*State v. King*, 867 N.W.2d 106, 112 (Iowa 2015). This case presents a greater need than that presented in *Griffin*. In this case, not only was Barth subject to supervised probation, he was also a registered sex offender subject to more vigorous supervision and greater restriction than a non-sex offender. Further, the intrusion into Barth's privacy was more limited than what occurred in *Griffin*. In *Griffin*, the Court allowed a warrantless search into the probationer's homestead. In contrast, here the probation officer conducted only a brief search of Barth's cellular phone. Finally, the search in this case was narrowly tailored to the purposes of supervision and not conducted for the purposes of law enforcement. As a sex offender, Barth was prohibited from accessing the internet and viewing pornography as part of his rehabilitative program. The officer's search of Barth's phone was limited to searching for prohibited activity.

With respect to Barth's claim arising under the Iowa Constitution, in *State v. Short*, the Iowa Supreme Court stated "under article I, section 8, the warrant requirement has full applicability to home searches of both probationers and paroleees by law enforcement." *State v. Short*, 851 N.W.2d 474, 506 (Iowa 2014) (reversing and remanding denial of a motion to suppress evidence seized at probationer's house pursuant to an invalid warrant obtained by law enforcement

officers).   In the recent case of *State v. King*, 867 N.W.2d 106 (Iowa 2015), however, the court did apply the special needs doctrine to a claim arising under article I, section 8 in the context of the search of a parolee's home.   To determine whether a warrantless search was justified under the special needs doctrine, the court analyzed three factors:   "(1) the nature of the privacy interest at stake, (2) the character of the intrusion, and (3) the nature and immediacy of the government concern at stake and the ability of the search to meet the concern." *Id* at 116.   The court held "parole officers have a special need to search the home of parolees as authorized by a parole agreement and not refused by the parolee when done to promote the goals of parole, divorced from the goals of law enforcement, supported by reasonable suspicion based on knowledge arising out of the supervision of parole, and limited to only those areas necessary for the parole officer to address the specific conditions of parole reasonably suspected to have been violated."   *King*, 867 N.W.2d at 126-27.   The court specifically reserved the question of whether the special needs doctrine would apply to probationers.   *See id.* ("We do not address the application of this standard to probationers . . . . ").   This case requires resolution of the question left unanswered in *King*.

We conclude the supreme court would apply the same special needs test in the context of a search of a sex offender and probationer's personal effects. There is nothing in the special needs doctrine that would preclude its application to probation searches.   To the contrary, the same non-investigatory purposes justifying application of the special needs doctrine to parolee searches—

compliance, prevention of recidivism, rehabilitation, and public safety—justify application of the special needs doctrine to sex offender and probationer searches. *See King*, 867 N.W.2d at 125 ("The general governmental concern at stake in this case involves compliance by parolees with the conditions of their parole to prevent recidivism. The policies of rehabilitation parolees and maintaining public safety are both enforced through the mechanism of the supervision of the parolee and the conditions imposed for the duration of parole.").

We also conclude the facts of this case satisfy the three-part standard set forth in *King*. *See id.* at 116. Here, Barth was subject to supervised probation and to supervision as a registered sex offender. The search of Barth's cellular phone was authorized by the "Sex Offender Treatment Program Contract/Supervision Agreement" and the probation agreement. As in *King*, Barth did not refuse or object to the search. As in *King*, the search in this case was done to promote the goals of supervised probation and the sex offender treatment program and divorced from the goal of law enforcement generally. Indeed, the offense conduct at issue in this case would not have been unlawful but for the restrictions placed on Barth relating to the sex offender treatment program. The probation officer's search was supported by reasonable suspicion based both on reasonable inferences drawn from the unidentified caller's inquiries into Barth's restrictions and the caller's statement Barth had used a phone camera, which was prohibited. Finally, the scope of the search was

limited only to Barth's cell phone to address the specific conditions of supervision. Barth's claim arising under article I, section 8 thus fails.

Barth next argues that the statements he made to his probation officer were the product of custodial interrogation and should have been suppressed pursuant to *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966). The defendant raises the claim under the Fifth Amendment, Fourteenth Amendment, and article I, section 9 of the Iowa Constitution. Barth did not present his state law claim to the district court, and it cannot be raised for the first time on appeal. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court."). We address only his federal constitutional claim.

The Fifth Amendment to the Federal Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "It has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 432 (1984). The Due Process Clause of the Fourteenth Amendment makes this right against self-incrimination binding on the states. *See Malloy v. Hogan*, 378 U.S. 1, 6 (1964). In *Miranda*, the Supreme Court required law enforcement officials to provide suspects with certain prophylactic warnings prior to commencing custodial interrogation. In the absence of such warnings and

waiver of the same, the State is prohibited from admitting into evidence any inculpatory statements obtained as a result of the custodial interrogation.

We conclude the defendant's *Miranda* claim fails. The controlling case is *Minnesota v. Murphy*, 465 U.S. 420 (1984). In that case, the Supreme Court held that a probationer's statements made to his probation officer during the course of a regularly scheduled meeting do not rise to the level of "custodial interrogation" requiring the administration of *Miranda* warnings. The court reasoned that a probation meeting is not custodial in nature. *See id.* at 433. "Custodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officers' will and to confess." *Id.* "It is unlikely that a probation interview, arranged by appointment at a mutually convenient time, would give rise to a similar impression." *Id.* The Court further reasoned that "any compulsion [the probationer] might have felt from the possibility that terminating the meeting would have led to revocation of probation was not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator." *Id.* Here, Barth was at a regular probation meeting with his probation officer. The meeting was set at a mutually convenient time. In fact, Barth had rescheduled the meeting due to a personal conflict. Barth traveled to the meeting on his own and without police escort or supervision. Barth was not placed under arrest during the probation meeting. Barth was not physically restrained during the probation meeting. As in *Murphy*, any compulsion Barth might have felt from the possibility of terminating the meeting,

which would have led to a revocation of probation, was not comparable with the coercion inherent in custodial interrogation. *See id.*

Barth also contends the district court should have suppressed the inculpatory statements Barth made to Sergeant Petersen following the interview with Officer Capelle. The State contends the statements were not obtained in violation of Barth's *Miranda* rights and any error was harmless.

Most federal constitutional errors "do not require reversal if the error is harmless." *State v. Peterson*, 663 N.W.2d 417, 430 (Iowa 2003). This includes the erroneous admission of a confession in violation of the defendant's rights. *See id.* Constitutional harmless error analysis focuses on the grounds upon which a verdict was reached in the actual trial and not on some hypothetical trial. *See Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). The issue "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* It is the State's burden to prove harmless error. The State must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967). We "weigh the probative force of that evidence against the probative force of the erroneously admitted evidence standing alone." *Id.* Within this framework, error is harmless when "the force of the evidence is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same without the erroneously admitted evidence." *Id.*

We need not address the issue of whether the inculpatory statements should have been suppressed because we conclude any error here constituted harmless error. The statements made to Sergeant Petersen were wholly unnecessary to the verdict, and there is little doubt the district court would have reached the same verdict without the evidence. The criminal conduct at issue was the defendant's reactivation of his Facebook account without notification to the appropriate authorities. It is not disputed the defendant had an obligation to notify the sheriff's department of the reactivation of his Facebook account. It also was not disputed that the defendant reactivated his account without doing so. Officer Capelle was aware of this information as a result of the search of Barth's phone and subsequent interview with Barth. The defendant's statements to Sergeant Petersen were merely cumulative of other evidence.

For the foregoing reasons, we conclude the district court did not err in denying the defendant's motion to suppress evidence. We affirm the defendant's convictions.

**AFFIRMED.**