UNITED STATES of America,

v.

Michael COATES, Defendant.

No. 4:08–cr–336.

United States District Court,
M.D. Pennsylvania.

Feb. 22, 2010.

Bill Simmers, Office of the U.S. Attorney, Williamsport, PA, for United States of America.

John H. Reed, Selinsgrove, PA, for Defendant.

## MEMORANDUM AND ORDER

JOHN E. JONES III, District Judge.

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before this Court is Defendant Michael Coates' Motion to Suppress (Doc. 28) filed on June 15, 2009. Evidentiary hearings were conducted on October 28, 2009 and November 25, 2009. After the official transcripts were filed, the parties filed post-hearing submissions. (Docs. 72, 73 and 74). Accordingly, the matter is ripe for disposition. For the reasons that follow, the Motion shall be denied.

## I. BACKGROUND

In the early morning hours of August 13, 2008, Defendant Michael Coates contacted the Bloomsburg Police Department, informing officers that he was receiving text messages from an individual who was threatening to kill Coates' friend Addison. Defendant further informed the officer that Addison was located in Ohio [1] and that he sought the Bloomsburg Police Department's assistance in contacting the Ohio authorities with regard to the threats.

At approximately 4:30 a.m. on August 13, 2008, Coates entered the Bloomsburg Police Station. He entered into the station's lobby and was met Bloomsburg Police Officer Steven Persing, who was seated behind a plexi-glass enclosed counter, similar to that of a bank-teller. Coates advised Officer Persing that he was the individual who had called concerning the threatening text messages and that he wanted the assistance of the Bloomsburg Police, in the form of corroborating his story with the Ohio police. Officer Persing asked Coates if Coates wanted Officer Persing to look at his text messages and, in turn, call the Ohio authorities. Coates responded in the affirmative and slid his cellular telephone through the slot underneath the plexiglass window to Officer Persing.

Coates' telephone was a "slider" model cellular telephone made by LG, which bears model number VX8550 and is commonly called an "LG Chocolate." [2] At the evidentiary hearing, Officer Persing testified that the cellular telephone was in a closed position when Coates slid it to him through the window slot. Officer Persing further testified that as Coates was sliding the phone through the slot, Coates informed him that the threatening message would be in his "messages" and that it "should be the first message." (Transcript, Volume I, 14:15–17). Coates testified that he slid the cellular telephone through the window slot to Officer Persing with the phone in an open position with the threatening text message appearing on the screen.[3] Although there had, at one point in time, been a video recording of the lobby of the police station and Coates' entrance thereto, the video was not preserved.[4]

---

1. There is some confusion as to whether Addison was located in Ohio or Indiana, however, the exact location is of no moment to our analysis.

2. The cellular telephone provider for Coates' phone was Verizon Wireless.

3. At the hearing, the Court asked the Defendant: "So you opened your phone outside the police station and you located the text message, kept the phone open, walked through the door and presented the officer with an open phone that you had manipulated before you even walked into the police station." The Defendant responded: "That's correct." (Tr., Vol. II, 44:21–25; 45:1).

4. It is well to note that the Defendant has not raised an argument under *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102

Also testifying at the hearing was Ray Colburn, who was housed with Coates on the separation block at the Columbia County Prison.[5] While housed together at the prison, Coates approached Colburn to discuss his case. Colburn testified that he had been "doing a lot of law research on my own case and stuff ... [and Coates] asked me one day if I knew anything about rules of evidence for cell phones, and I said no, not really." (Tr., Vol. II, 49:3–6). Colburn testified that Coates informed Colburn that he [Coates] was going to "beat it on a technicality." (Tr., Vol. II, 49:13–14). Coates told Colburn that he intended to lie and testify that the phone was closed when he handed it to the officer, knowing that his testimony could not be disproved by the surveillance tapes, because they had been destroyed.

Officer Persing, who was unfamiliar with the LG Chocolate cellular phone, then attempted to retrieve Coates' text messages. While he was attempting to locate the messages on the phone, he continued to converse with Coates through the plexiglass window, to obtain additional background on the situation with the female in Ohio. Officer Persing testified that he was "manipulating the phone with my thumb and looking up talking to him and basically not really paying attention to what was going on with the phone, just more or less conversing with him." (Tr., Vol. I., 15:6–11). Officer Persing testified that at no point in time did Coates offer to show him where the messages were, to manipulate the cellular phone for Officer Persing, or ask Officer Persing to stop manipulating through the phone's contents.

During the simultaneous conversation with Coates and manipulation of the phone, Officer Persing testified that "after maybe a minute, one minute, two minutes, [I] looked down and on the display screen were four picture images." (Tr., Vol. I, 15:12–13). At least one of the four images located on the screen was an image plainly depicting child pornography. The ghastly image was of a female child, approximately three to four years old, performing oral sex on an adult male. (Government Exhibit 10). After observing this image of child pornography, Officer Persing did not search the phone further for any more images.

After Officer Persing saw the image of child pornography on Coates' phone, he asked his fellow police officer, Patrolman Pifer, to escort Coates to an interview room so that Coates could provide a written statement regarding the threatening text messages concerning the female in Ohio.[6] While Patrolman Pifer was taking Coates to the interview room, Officer Persing called his superior, Lieutenant Joseph Wondoloski to advise him about what he had just observed on Coates' cellular phone.

After speaking with Lieutenant Wondoloski, Officer Persing went into the interview room and told Coates that they had to address another matter, namely the child pornography found on his cellular phone. Officer Persing read Coates his Miranda rights and Coates signed a Miranda form, indicating that he had been read his rights. Officer Persing then conducted an interview with Coates wherein

L.Ed.2d 281 (1988) regarding the destruction of the surveillance tape, stating that he does not believe the Government acted in bad faith with regards to the tape's destruction. Based on the testimony given at the hearings, we are of the same mind.

5. Colburn is awaiting sentencing before this Court on an unrelated criminal matter involving narcotics.

6. Coates did provide a written statement regarding the threatening text messages.

Coates informed Officer Persing that the female child in the image was his 2 and a half year old daughter and that he was the adult male in the photo. He stated that the incident occurred in the bathroom of the town park in Bloomsburg. Coates also provided a written statement.

Later on August 13, 2008, Lieutenant Wondoloski obtained a search warrant for Coates' cellular phone. The cellular phone was thereafter turned over to the Pennsylvania State Police Computer Crime Unit for forensic analysis of its contents. The forensic analysis, performed by Pennsylvania State Trooper Scott Sotack, uncovered child pornography stored on the cellular phone.

At the evidentiary hearing, Trooper Sotack performed a demonstration on Coates' cellular phone, showing the Court how the phone was manipulated in general and where both text messages and pictures are located in particular. Trooper Sotack explained that the "user interface is a tactile response user interface." (Tr., Vol. II, 20:14–15). Trooper Sotack further testified that if an individual was unfamiliar with Coates' type of cellular phone, it could be difficult to retrieve text messages.

On September 11, 2008, a Grand Jury sitting in Williamsport, Pennsylvania returned a three count Indictment against the Defendant charging him with production of child pornography in violation of 18 U.S.C. § 2251(a) and (e), production of child pornography by a parent in violation of 18 U.S.C. § 2251(b), and receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B).

On September 15, 2008, Coates pled not guilty at the initial appearance and was detained pending trial. Thereafter, on June 15, 2009, Defendant filed the instant Motion, seeking to suppress the images of child pornography contained on his cellular telephone and computer, as well as the statement he gave to the Bloomsburg Police Department.[7] As noted above, the Motion is fully briefed and ripe for disposition.

## II. SEARCH OF CELLULAR TELEPHONE

### A. THE FOURTH AMENDMENT

The governing jurisprudence of the Fourth Amendment to the United States Constitution is the logical starting point in our analysis of Officer Persing's search of Coates' cellular telephone on August 13, 2008. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. IV.

In order to challenge a search as violative of the Fourth Amendment, the individual must show that he manifested a subjective expectation of privacy in the object of the challenged search, and that society is willing to recognize that expectation as reasonable. *See Kyllo v. United States,* 533 U.S. 27, 28, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). To demonstrate a subjective expectation of privacy in an object, the inquiry turns on whether the individu-

---

7. At the November 25, 2009 hearing, the Government indicated that none of the charges against the Defendant were predicated on images of child pornography stored on the computer, nor does the Government intend to offer any evidence concerning the computer's contents at trial. Accordingly, the parties did not brief this issue inasmuch as it has become moot.

al, by his conduct, has exhibited an actual expectation of privacy and whether the individual's subjective expectation of privacy is reasonable. *See Bond v. United States*, 529 U.S. 334, 338, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000). Thus, an individual invoking the Fourth Amendment must establish a "justifiable" and "reasonable" expectation of privacy. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

## B. ANALYSIS

■ As a threshold matter, we must determine whether the Defendant had a reasonable expectation of privacy in his cellular telephone when he handed the phone to Officer Persing on August 13, 2008. As discussed above, the Defendant and Officer Persing gave conflicting testimony about the condition of the phone (*open v. closed*) when Coates gave the phone to Officer Persing. In this Court's view, with respect to the condition of the phone, the testimony of Officer Persing and Ray Colburn were credible, and the testimony of the Defendant was not. In drawing this conclusion, we note that we simply do not believe Coates' testimony that he opened the phone, scrolled the message he wanted the police to view, *all before* he entered the police station, with the phone open and handed it to Officer Persing. Our disbelief of Coates is bolstered by Colburn's testimony indicating that Coates was aware that the surveillance tape of the police station lobby had been destroyed, so that his testimony that the phone was open could not be disproved.

Finding that the cellular phone was in a closed position when Coates handed it to Officer Persing, we cannot and do not find that Coates had a reasonable expectation of privacy in the phone. On August 13, 2008, Coates entered the Bloomsburg Police Station of his own free will and voluntarily gave control of his cellular phone to Officer Persing. Coates relinquished his phone to Officer Persing without manifesting any privacy concerns therein. Indeed, the only instruction Coates gave to Officer Persing was that the threatening message was in his text messages inbox. In rendering this instruction to Officer Persing, he did not, for example, indicate that other areas of the cellular phone were private, nor did he give Officer Persing precise instructions as to how to find the text message. Further, Coates was not compelled or forced to give Officer Persing his phone. By his own actions, Coates simply did not exhibit a reasonable expectation of prohibitions of the Fourth Amendment.[8]

■ Even assuming, *arguendo*, that Coates had a reasonable expectation of privacy in his cellular telephone, there is an availing exception to the Fourth Amendment's warrant requirement that obtains here, namely consent.

■ Consent is one of the several well-recognized exceptions to the Fourth Amendment's warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Consent, and the scope thereof, is measured by a test of objective reasonableness, that being "what would the typical reasonable person have understood by the exchange between the officer and the subject." *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). In determining the scope of consent, courts look "beyond the language of the consent itself, to the overall context."

8. Our determination is quite obviously based on the facts as we have found them in the case *sub judice*. Had Officer Persing, for example, left the front desk and conducted a searching examination of Coates' telephone outside his presence, a different result might be mandated.

*Id.* If when giving consent to search, the party limits the scope of the consent, courts narrowly construe the limitation to determine whether the officers' conduct was objectively reasonable. *Id.*; *see also United States v. Melendez*, 301 F.3d 27, 32 (1st Cir.2002) (upholding consent search where home owner instructed police not to "tear up" premises, where police dismantled but did not damage stereo speaker in which evidence was found).

The scope of consent Coates gave to Officer Persing regarding the search of the phone is determined by the condition (*open v. closed*) of the phone when it was turned over and the instruction of Coates to Officer Persing that the message was in his text messages. By handing Officer Persing his cellular phone in a closed position, Coates was essentially giving his consent for Officer Persing to travel through the menus on the phone in order to reach text messages. To reiterate, Coates did not tell Officer Persing *not* to look into other areas of his phone, nor did he guide Officer Persing to the text message menu. Simply put, Coates did not limit the scope of the consent he gave to Officer Persing to search his cellular phone. Indeed, Coates assumed the risk that the very discovery that occurred would take place when he handed his phone to Officer Persing and stood by while Officer Persing manipulated it. Officer Persing's conduct was entirely reasonable under the circumstances: he was unfamiliar with the type of cellular phone and he was conversing with Coates while he was scrolling through the phone.[9] Thus, it cannot be found that Officer Pers-

ing violated Coates' consent by accidentally finding images of child pornography on Coates' cellular telephone while he was attempting to locate text messages.

### C. CONCLUSION

Accordingly, based on the foregoing reasons, we shall deny the Defendant's Motion to Suppress with respect to the search of his cellular telephone.

### III. DEFENDANT'S STATEMENT

Coates also moves the Court to suppress the statements he gave to the Bloomsburg Police, arguing that he was subjected to custodial interrogation prior to being advised of his *Miranda* rights. However, the Court's review of videotape of Coates' interrogation at the Bloomsburg Police Station on August 13, 2008 clearly demonstrates that Coates' argument is without merit. Coates was read his Miranda rights by Officer Persing and signed the form indicating that he was read his rights and that he understood them. (Government Exhibit 1). Only *after* the Miranda rights were read and Coates signed the waiver form did Officer Persing begin to interrogate Coates. Accordingly, Defendant's Motion to Suppress the statements he gave to the Bloomsburg Police on August 13, 2008 is denied. **NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Suppress (Doc. 28) is **DENIED.**

---

**9.** In the Court's experience, only the most practiced technophiles can instantly navigate the myriad and frequently confounding applications contained within an unfamiliar cellular phone. These phones are typically anything but intuitive, and there was no indication that Officer Persing possessed any special skill or knowledge regarding the operation of the phone in question. As with most cellular phones, the LG Chocolate contains unmarked buttons that allow a user to access multiple functions. Our perception after viewing the demonstration of the subject phone leads us to the inescapable conclusion that Officer Persing stumbled upon the image in question in the course of a good faith effort to find the text message Coates sought to have him read.