# IN THE SUPREME COURT OF IOWA

No. 12–0305

Filed June 7, 2013

**STATE OF IOWA,**

Appellee,

vs.

**KENNETH RAY WASHINGTON III,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, William A. Price, Judge.

Defendant appeals sentence alleging district court improperly penalized him for invoking his constitutional right against self-incrimination. **SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.**

Robert G. Rehkemper III of Gourley, Rehkemper & Lindholm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, John P. Sarcone, County Attorney, and Kevin D. Hathaway, Assistant County Attorney, for appellee.

Matthew J. Clair-Femrite, Student Legal Intern, and Robert R. Rigg, Supervising Attorney, Des Moines, for amicus curiae Drake University Legal Clinic, Criminal Defense Program.

Gary D. Dickey Jr. of Dickey & Campbell Law Firm, P.L.C., Des Moines, for amicus curiae ACLU of Iowa.

**WATERMAN, Justice.**

In this appeal, we must decide whether the sentencing court improperly penalized the defendant for invoking his Fifth Amendment right against self-incrimination. We conclude that when the district court asks the defendant a question at sentencing and then imposes an adverse sentencing consequence unrelated to any legitimate penological purpose of the inquiry because the defendant invoked his Fifth Amendment rights, the defendant has been improperly penalized.

Kenneth R. Washington III pled guilty to possession of marijuana. The State agreed to jointly recommend a deferred judgment with fifty hours of community service, one year of probation, and a $500 civil penalty. At the hearing on his plea and sentencing, the court (initially off the record) first indicated it would defer judgment, but then threatened to convict Washington immediately after he declined, on advice of counsel, to answer the court's question of whether he would test positive if given a drug test. The court repeated the drug-test inquiry on the record. Defense counsel again invoked Washington's right to remain silent. The court deferred judgment, but imposed 250 hours of community service and a $350 civil penalty.

We granted Washington's application for discretionary review and retained the appeal. On our de novo review, we find that by imposing 250 hours of community service unconnected to a penological goal related to the court's inquiry, such as drug treatment, the sentencing court improperly penalized Washington for invoking his Fifth Amendment right against self-incrimination. We vacate the sentence and remand the case for resentencing.

## I. Background Facts and Proceedings.

On October 6, 2011, Officer Jeremy Siepker was on patrol in Windsor Heights and, just after midnight, pulled over a Dodge Neon with a burned-out brake light. While speaking with the twenty-one-year-old driver, Washington, Siepker smelled "a strong odor of marijuana coming from inside the vehicle." Siepker told Washington to step out of the car and asked if he could search him. Washington consented to the search. Siepker found two plastic bags of what Washington admitted was marijuana in his pockets along with a metal marijuana pipe and a digital scale. Siepker next found small plastic bags with marijuana residue and a loaded revolver in the trunk of Washington's car. Washington admitted the handgun belonged to him. Washington was arrested and later charged by trial information with carrying a weapon in violation of Iowa Code section 724.4 (2011), an aggravated misdemeanor, and possession of a controlled substance (marijuana) in violation of Iowa Code section 124.401(5), a serious misdemeanor. He also was charged with possession of drug paraphernalia in violation of section 124.414, a simple misdemeanor.

Washington completed a court-ordered substance-abuse evaluation and reached a plea agreement with the prosecution. He agreed to plead guilty to possession of marijuana in exchange for dismissal of the weapons and drug paraphernalia charges. The State agreed to jointly recommend deferred judgment with fifty hours of community service, one year of probation, and a $500 civil penalty. The plea agreement was not conditioned on the court's acceptance of those sentencing requests. On February 3, 2012, Washington appeared with counsel, Robert Rehkemper, to enter his guilty plea and for sentencing.

The proceedings began off the record. According to Rehkemper's on-the-record recapitulation of the off-the-record discussion minutes later, the court had accepted the guilty plea and said, "I'm going to defer judgment." The court then explored Washington's employment status and ability to pay the $500 penalty. Matters suddenly became tense when the sentencing court, still off the record, asked Washington if he would be "clean or dirty" if required to drop a urinalysis. Rehkemper's account of what happened next is as follows:

> I stepped in and informed the Court I did not believe it was appropriate for the Court to inquire that of Mr. Washington. And in any event, Mr. Washington would exercise his Fifth Amendment right to remain silent, which he still retains through sentencing.
> At that point, the Court told Mr. Washington and counsel that that's fine, he didn't have to defer judgment, he can take the conviction.

Rehkemper asked for a court reporter to make a record. The proceedings continued on the record. After stating what had just transpired off the record, Rehkemper elaborated on his legal argument that Washington had a right to remain silent at sentencing under the Fifth Amendment and "the corresponding section of the Iowa Constitution." Rehkemper, referring to *Mitchell v. United States*, 526 U.S. 314, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999), argued that a "court may not make an adverse inference of an individual's exercise of his Fifth Amendment rights at sentencing." Rehkemper asserted that the district court

> had all but accepted [the plea agreement], and it appears the only reason why the Court would not defer judgment, as to Mr. Washington, would be his election of not to answer the question of whether or not he would drop dirty or clean today.

The court, without otherwise disputing Rehkemper's description of what had transpired off the record, stated no plea had been accepted yet. At the court's direction, they started over with the plea process on the record.

During the ensuing colloquy, the parties reiterated the plea agreement. The court admonished Washington that the plea agreement was not binding on the court, and he could be sentenced to up to 180 days in jail and a $1000 fine. Washington elected to proceed with his guilty plea, which the court accepted. Washington also elected to proceed with sentencing at that time. Counsel and Washington declined to make any further statement before the court imposed sentence. The court elicited from Washington that he had been unemployed since August and had never received a deferred judgment. Then matters became tense again:

> THE COURT: Mr. Washington, if you were to drop a urine sample today, would it be clean or dirty for marijuana?
>
> MR. REHKEMPER: Your Honor, at this time I'm going to instruct my client not to answer that question and invoke his constitutional right against self-incrimination under the Fifth Amendment [and] the corresponding section of the Iowa Constitution.
>
> THE COURT: Okay. What's the State's position?
>
> MR. HATHAWAY: Your Honor, I would simply ask that if the Court—it's certainly within the Court's discretion, whether or not to impose—or to grant a deferred judgment in this case. I would simply ask that the Court enunciate specifically its reasons for granting or denying a deferred judgment, in any event.
>
> MR. REHKEMPER: And, Your Honor, I can provide the Court with a copy of *Mitchell versus United States*, if the Court would like to review it.
>
> THE COURT: All right. Mr. Washington, are you requesting a deferred judgment?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And do you concur with your client's request, Mr. Rehkemper?

MR. REHKEMPER: Yes, Your Honor. And we would formally request a deferred judgment in this case.

THE COURT: In this matter, judgment is deferred. The Court is basing this on the fact that Mr. Washington has no prior criminal history. However, I'm not accepting that part of the plea agreement making the fine $500—or the civil penalty $500. I'm making it $315, because Mr. Washington has not worked since the summer. However, in light of the nature of the offense, the Court is going to order that Mr. Washington complete 250 hours of community service, to be completed within 150 days. And he is to complete 30-hour—excuse me—50 hours in the next 30 days. A failure to complete 50 hours in a 30-day period will be considered to be a violation of probation.

. . . .

Anything else you want to place on the record?

MR. REHKEMPER: Yes, please.

THE COURT: Go ahead.

MR. REHKEMPER: Your Honor, I'd ask the Court reconsider the imposition of the 250 hours of community service, all but [quintupling] Mr. Washington's community service obligation.

Your Honor, this young man, who obviously as a condition of probation will need to obtain full-time employment—well, search for full-time employment, and two, obtain it and maintain it while attempting to do that amount of community service is unnecessarily burdensome on Mr. Washington.

I would ask the Court to reconsider that. And also to articulate the specific basis of why the Court believes 250 hours of community service is necessary and appropriate under the facts and circumstances of this case as pertained to Mr. Washington, when the Court routinely doesn't impose any community service on deferred judgments, or it is anywhere from 50 to 100 hours.

There is nothing special about Mr. Washington's case that would warrant the 250 hours, other than the fact that he invoked his constitutional right not to answer the Court's question.

THE COURT: To the contrary, Mr. Rehkemper. You can look at the orders that were entered, yesterday, there were several in that range that involved deferred judgments.

MR. REHKEMPER: Could the Court articulate why the Court feels 250 hours is necessary for Mr. Washington's case?

THE COURT: It just believes that Mr. Washington would benefit by the community service, as would the community, in light of the deferred judgment being granted in this matter. Thank you.

Washington filed an application for discretionary review with our court. We granted the application and stayed his community service obligations pending resolution of his appeal. Meanwhile, Rehkemper followed up on the court's invitation to "look at the orders entered yesterday." On that day and the preceding Thursday combined, sentencing orders had been entered in twenty-nine Polk County cases on pleas to possession of a controlled substance, first offense. Judgment was deferred in eleven of those cases. Community service was only ordered in two. In one of those, the defendant was referred to drug treatment and required to complete 150 hours of community service within ninety days and pay a $315 civil penalty. Eight of the defendants were ordered to provide urine samples before sentence was imposed. Six defendants tested "negative" and received deferred judgments with no community service requirement. Two defendants tested positive; one received a ten-day jail sentence and the other received a deferred judgment with 200 hours of community service to be completed in 100 days. There was no order for more than 200 hours of community service. Washington filed a motion to take judicial notice of the sentencing orders and court files in these twenty-nine cases and data summarizing the dispositions. That motion is submitted with this appeal.

**II. Scope of Review**.

We review de novo Washington's claim that the sentencing court improperly penalized him for invoking his constitutional right against self-incrimination. *See State v. Iowa Dist. Ct.*, 801 N.W.2d 513, 517

(Iowa 2011) (reviewing evidence de novo on claimed violation of Fifth Amendment); *see also State v. Harrington*, 805 N.W.2d 391, 393 (Iowa 2011) (reviewing de novo claim sentence was result of "judicial vindictiveness").

Because we resolve this appeal under the Fifth Amendment, we need not and do not reach the claim under the Iowa Constitution. *See Mitchell County v. Zimmerman*, 810 N.W.2d 1, 3 n.1 (Iowa 2012) (declining to reach claim under Iowa Constitution when court held defendant prevailed under the United States Constitution).

### III. Analysis.

We must decide whether the sentencing court crossed the constitutional line by requiring 250 hours of community service after Washington invoked his right against self-incrimination to decline to answer the following question: "[I]f you were to drop a urine sample today, would it be clean or dirty for marijuana?"  Washington contends the sentencing court imposed 200 *additional* hours of community service in retaliation for his refusal to answer an "improper" question about "uncharged and unproven conduct."  The State contends that the question was proper during sentencing on a drug charge and that the community service imposed was within the court's discretion and not retaliatory.  Before we frame the Fifth Amendment analysis, we must determine the scope of the record by ruling on the motion to take judicial notice of other court files.

**A. Judicial Notice.**  When defense counsel challenged the 250 hours of community service as retaliatory, the sentencing judge responded, "To the contrary . . . look at the orders that were entered yesterday, there were several in that range that involved deferred judgments."  Washington obtained the records of twenty-nine other Polk

County District Court files with contemporaneous sentencing orders for possession of a controlled substance, first offense, and filed a motion to take judicial notice of these records. The State resisted. We deny the motion.

Judicial notice may be taken on appeal. *See* Iowa R. Evid. 5.201(*f*) ("Judicial notice may be taken at any stage of the proceeding."); *State v. Sorensen,* 436 N.W.2d 358, 363 (Iowa 1989) (taking judicial notice on appeal). The rule permits a court to take judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Iowa R. Evid. 5.201(*a*)–(*b*). However, "[t]he general rule is that it is not proper for the court to consider or take judicial notice of the records of the same court in a different proceeding without an agreement of the parties." *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 861 (Iowa 1990). Washington argues we should allow an exception here "because the sentencing court specifically referenced the other cases as a point of comparison for [his] sentence." The State argues the filings in the other misdemeanor cases "do not tell the full story" behind each sentence imposed. We agree with the State.

The validity of any comparison between sentences depends on too many individual variables, not all of which would be reflected in the record. For example, unreported colloquies may have influenced certain sentences.

> "[No] appellate court should ever take judicial notice of any facts that might control constitutional adjudication without informing all counsel and sending the case back to the trial court to give counsel an opportunity to show the erroneous or irrelevant nature of the facts judicially noticed."

*City of Council Bluffs v. Cain*, 342 N.W.2d 810, 813–14 (Iowa 1983) (quoting Chester J. Antieau, *Modern Constitutional Law* § 15:38 (1969)). But, even minitrials on the similarities and differences between these cases are unlikely to fully explain each sentence. Washington cites no case, and we found none, allowing appellate judicial notice of other court files to help show a judge abused his discretion in sentencing. Under the circumstances, we conclude judicial notice of the other court files is inappropriate. Accordingly, we will confine our review to the record in Washington's proceeding.

### B. Fifth Amendment Claim.

1. *Fifth Amendment caselaw.* The Fifth Amendment to the United States Constitution provides, "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." A guilty plea does not waive the right against self-incrimination at sentencing. *Mitchell*, 526 U.S. at 325, 119 S. Ct. at 1313, 143 L. Ed. 2d at 435. Indeed, the protections of the Fifth Amendment continue through conviction and imprisonment. *Iowa Dist. Ct.*, 801 N.W.2d at 518 ("The Fifth Amendment's guarantees extend to [a defendant] despite his conviction and imprisonment.").

Nevertheless, the context in which the right is invoked—whether at trial, sentencing, or postconviction proceedings—affects our analysis. *See McKune v. Lile*, 536 U.S. 24, 36, 122 S. Ct. 2017, 2026, 153 L. Ed. 2d 47, 59 (2002) ("[T]he fact of a valid conviction and the ensuing restrictions on liberty are essential to the Fifth Amendment analysis."). As the *McKune* Court noted, "A broad range of choices that might infringe constitutional rights in a free society fall within the expected conditions of confinement of those who have suffered a lawful conviction." *Id.* Washington was not incarcerated when he invoked his right against self-

incrimination, but he was standing before a sentencing judge whose options ranged from one-year of incarceration to a deferred judgment with no conviction. We must analyze his Fifth Amendment claim in the specific context of his sentencing on his guilty plea to possession of marijuana. We begin with the leading Supreme Court decision on Fifth Amendment claims raised at sentencing proceedings—*Mitchell.*

In *Mitchell,* the defendant pled guilty to drug offenses without admitting the quantity of cocaine necessary to determine the length of her mandatory minimum sentence. 526 U.S. at 317, 119 S. Ct. at 1310, 143 L. Ed. 2d at 430. The sentencing court relied on other witnesses to establish the amount and expressly held defendant's silence against her. *Mitchell,* 526 U.S. at 318–19, 119 S. Ct. at 1310, 143 L. Ed. 2d at 431. The Supreme Court reversed, holding that a sentencing court may not draw an adverse inference from defendant's silence in determining the facts of the offense. *Id.* at 330, 119 S. Ct. at 1316, 143 L. Ed. 2d at 438. The Supreme Court admonished that "[t]he Government retains the burden of proving facts relevant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege." *Id.* Washington argues that *Mitchell* is dispositive of this case. We disagree.

*Mitchell* is fundamentally distinguishable. It was decided under the federal sentencing system then in effect in which the quantity of cocaine directly determined the severity of the offense and, thus, Mitchell's sentence. The sentencing court used Mitchell's invocation of her Fifth Amendment rights to help resolve a fact question relating to the seriousness of Mitchell's crime. Here, by contrast, Washington had already pled guilty to his crime, and there was no disagreement as to what it was. Rather, the court's question related to Washington's drug

use nearly four months *after* the crime to which he pled guilty, a potentially relevant consideration in exercising sentencing discretion. The *Mitchell* Court expressly left open the question whether a court may consider the defendant's silence to determine other factors relevant to sentencing, such as lack of remorse or acceptance of responsibility:

> Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998), is a separate question. It is not before us, and we express no view on it.

*Id.* at 330, 119 S. Ct. at 1316, 143 L. Ed. 2d at 438–39.

*Mitchell*, thus, does not address whether a defendant's Fifth Amendment right to remain silent is infringed whenever the court considers his refusal to answer relevant questions in determining the proper sentence. Furthermore, in this case, Washington was seeking a deferred judgment, a benefit. *See State v. Nail*, 743 N.W.2d 535, 545 (Iowa 2007) (describing deferred judgment as a benefit that allows the defendant to avoid a conviction). A sentencing judge could have a legitimate reason for wanting to know whether Washington was continuing to use marijuana months after his arrest before deciding whether to defer judgment. As the State argues:

> The Court's question related to sentencing, whether Washington had seen the error of his ways and stopped involving himself with controlled substances or with other people around him consuming them. If he had, the Court could be more lenient, secure in the belief his chances for reform were good. If Washington had not separated himself from a drug culture, the Court might not believe leniency was appropriate. His chances of re-offense would be higher.

We, thus, recognize that whether a defendant is continuing to use marijuana may be a relevant consideration at sentencing on a drug conviction. On the other hand, in a strict sense, a judge who asks about

drug use at sentencing is asking for information that might incriminate the defendant.

Some sentencing courts avoid Fifth Amendment issues altogether by ordering the defendant to submit to a urinalysis to help determine eligibility for probation on drug convictions. *See generally* Anne M. Payne, *Propriety of Conditioning Probation on Defendant's Submission to Drug Testing*, 87 A.L.R.4th 929 (1991 & Supp. 2012). The Fifth Amendment is not implicated because a urine test is not testimonial evidence. *See Hess v. Ables*, 714 F.3d 1048, 1053 (8th Cir. 2013) ("[A] urine drug test would not violate her Fifth Amendment right against self-incrimination because urine samples, which are not testimonial evidence, do not trigger Fifth Amendment protections."). A court-ordered blood test, however, is a search for Fourth Amendment purposes. *See Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1558, ___ L. Ed. 2d ___, ___ (2013). In *State v. Guzman*, a divided Wisconsin Supreme Court rejected a Fourth Amendment challenge to a urinalysis ordered for sentencing purposes to determine whether a defendant convicted of a drug crime should be given probation. 480 N.W.2d 446, 456 (Wis. 1992). The majority noted, "Whether the convicted defendant continues to use drugs is of paramount importance in his or her rehabilitation. A judge must necessarily have such information to ascertain the rehabilitative needs of one convicted of a drug-related offense." *Guzman*, 480 N.W.2d at 454. Two justices dissented, fearing the majority opened the door to a broad array of unconstitutional searches. *See id.* at 459 (Heffernan, C.J., dissenting). Washington's appeal does not challenge a court-ordered urinalysis. Rather, we are confronted with the sentencing judge's direct question to Washington regarding his drug use.

After *Mitchell*, a number of state appellate decisions have held the sentencing court may consider the defendant's silence or refusal to answer questions in determining the appropriate sentence. *See, e.g.*, *State v. Hernandez*, 295 P.3d 451, 454 (Ariz. Ct. App. 2013) (noting its agreement "with those jurisdictions that have concluded the Fifth Amendment does not preclude a sentencing court from considering a defendant's refusal to answer questions about the offense in determining whether he or she is a suitable candidate for probation" and collecting cases from other jurisdictions); *State v. Blunt*, 71 P.3d 657, 662 & n.13 (Wash. Ct. App. 2003) (recognizing that "most courts have generally declined to extend *Mitchell* to prohibit inferences from silence in the context of sentence enhancements that do not involve factual details of the underlying crime" and collecting cases).

One situation federal and state courts have repeatedly addressed since *Mitchell* is whether the court may properly consider a defendant's refusal to participate in a presentence investigation (PSI) when sentencing the defendant. For example, in *United States v. Kennedy*, the Sixth Circuit held *Mitchell* permits the district court applying federal sentencing guidelines to consider the defendant's refusal to participate in a court-ordered psychosexual evaluation and interview that was part of the PSI. 499 F.3d 547, 551–52 (6th Cir. 2007). The defendant objected to the interview on Fifth Amendment grounds and argued the sentencing court "improperly took account of his unwillingness" to answer questions. *Kennedy*, 499 F.3d at 551. In rejecting his Fifth Amendment challenge, the Sixth Circuit noted the sentencing court "plainly considered Kennedy's refusal to complete testing in determining his propensity for future dangerousness, rather than in determining facts of the offense." *Id.* at 552. The Sixth Circuit read *Mitchell* narrowly:

> Given the narrowness of its holding, *Mitchell* simply does not limit the district court's ability to consider a wide variety of "information concerning the background, character, and conduct" of the defendant in determining an appropriate sentence, 18 U.S.C. § 3661; to "order a study of the defendant," *id.* § 3552(b); and, therefore, to consider the defendant's refusal to cooperate in assessing what sentence is necessary "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C).

*Id.*

State supreme courts likewise have read *Mitchell* as allowing the sentencing court to consider the defendant's noncooperation with a PSI. *See, e.g., Lee v. State*, 36 P.3d 1133, 1141 (Wyo. 2001) ("It was [defendant's] right to refuse the [PSI] assessment and the district court's right to consider such refusal in determining the appropriate sentence."). In *State v. Muscari*, the defendant remained silent on advice of counsel during the PSI interview. 807 A.2d 407, 415 (Vt. 2002). The sentencing court accepted the PSI and sentenced him to a term in prison. *Muscari*, 807 A.2d at 415. The Vermont Supreme Court affirmed the prison sentence. *Id.* at 416–17. The *Muscari* court noted that, consistent with *Mitchell*, the sentencing court permissibly "considered defendant's silence at the PSI as one factor in determining whether defendant had accepted responsibility and expressed remorse for his violent criminal behavior." *Id.* at 416. Similarly, in *Dzul v. State*, a divided Nevada Supreme Court affirmed the denial of probation to a defendant who refused to admit guilt for the charged offense during the PSI's psychosexual evaluation. 56 P.3d 875, 885–86 (Nev. 2002). The *Dzul* court, however, noted a split in authority on whether a sentencing court could withhold leniency based on the defendant's refusal to admit guilt. *Dzul*, 56 P.3d at 881–84 (surveying state and federal cases). The *Dzul* court relied on *McKune* to hold the state may deny benefits to defendants who refuse to admit guilt as to the crime of conviction during a sex-offender treatment program.

*Id.* at 884–85. A majority of the Nevada Supreme Court concluded that "presenting Dzul with the choice [to] admit[] responsibility for the offense to which he pleaded guilty" to get a lighter sentence "does not violate his Fifth Amendment right against self-incrimination." *Id.* at 885. The *Dzul* court distinguished cases holding the denial of sentencing reductions could not be based on the defendant's refusal to admit to *uncharged* conduct. *Id.* at 883–84.

We, too, followed *McKune* in rejecting a Fifth Amendment challenge in *Iowa District Court. See Iowa Dist. Ct.*, 801 N.W.2d at 527–28. But, both *McKune* and *Iowa District Court* involved the defendant's refusal to admit his guilt in the crime for which he was sentenced in connection with a sex-offender treatment program. *Id.* at 527 ("Harkins does not claim that he will be forced to disclose other, as-yet-unknown sex offenses."). By contrast, Washington argues the Fifth Amendment violation here arises from his refusal to answer questions about *uncharged conduct,* that is, his use of marijuana at the time of sentencing rather than his possession of that drug at the time of his arrest nearly four months earlier. Washington also relies on our caselaw holding the sentencing court is not permitted to consider unproven and uncharged conduct. "It is a well-established rule that a sentencing court may not rely upon additional, unproven, and unprosecuted charges unless the defendant admits to the charges or there are facts presented to show the defendant committed the offenses." *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002). "If a district court improperly considers unprosecuted and unproven additional charges, we will remand the case for resentencing." *Id.*; *accord State v. Jose*, 636 N.W.2d 38, 42–43 (Iowa 2001) (discussing showing required to vacate sentence). Washington argues the Fifth Amendment allowed him to refuse to answer whether his

urinalysis at the time of sentencing would be "clean or dirty" and that the sentencing court improperly penalized him with a harsher sentence for invoking that right.

*McKune* and *Iowa District Court* did not decide whether the Fifth Amendment precludes a sentencing court from considering the defendant's refusal to answer a question about uncharged conduct in deciding whether to defer judgment or impose other conditions. But, those decisions nevertheless provide guidance here regarding the choices that may be imposed after the defendant's guilt is established. In *Iowa District Court*, we observed that, as in *McKune*, the inmate may be confronted with hard choices. *See Iowa Dist. Ct.*, 801 N.W.2d at 527–28. The key question is "whether the choice arose as a result of the defendant's conviction within the criminal justice system and whether imposing the choice serves a proper goal of that system." *Id.* at 528. We noted both the plurality and special concurrence in *McKune* "recognize[d] that a fair criminal process may impose difficult choices on defendants to serve a valid penological goal, without crossing the line into unconstitutional compulsion." *Id.* at 523. We quoted Justice Kennedy's observation that, " '[R]ehabilitation is a legitimate penological interest that must be weighed against . . . an inmate's liberty.' " *Id.* at 520 (quoting *McKune*, 536 U.S. at 36, 122 S. Ct. at 2026, 153 L. Ed. 2d at 59 (plurality opinion)). We concluded the sex-offender treatment program "was established for bona fide rehabilitative purposes," and "requiring the offender to acknowledge responsibility for his offense serves one of those purposes." *Id.* at 519.

The Fifth Amendment, thus, allows room for hard choices after a conviction when legitimate penological goals are served. A defendant facing sentencing may confront such choices when he or she is asked to

provide his or her version of the offense for purposes of a PSI. Likewise, the defendant may face the same dilemma when offered the right of allocution at the sentencing hearing. If the defendant does not admit to having engaged in criminal conduct, will the defendant appear unremorseful or unlikely to benefit from rehabilitation?

We now apply these principles to determine whether the sentencing court violated Washington's Fifth Amendment right against self-incrimination.

2. *Application.* On our de novo review, we find the sentencing court improperly penalized Washington for invoking his right against self-incrimination.

Washington concedes the sentence imposed was within statutory limits. Accordingly, his sentence "is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters." *Formaro*, 638 N.W.2d at 724. To overcome the presumption, we have required an affirmative showing the sentencing court relied on improper evidence. *Jose*, 636 N.W.2d at 41; *cf. State v. Mitchell*, 670 N.W.2d 416, 424–25 (Iowa 2003) (requiring showing of "actual vindictiveness" to prevail on due process challenge to harsher resentence imposed by different judge after defendant's successful appeal).

It can be difficult to draw the line between protecting the right against self-incrimination and preserving sentencing discretion. In *Burr v. Pollard*, the Seventh Circuit described the line-drawing challenge as follows:

> The Fifth Amendment protects an accused's right to remain silent at trial and sentencing. That right, of course, would mean little if a judge could punish a defendant for invoking it. Nevertheless, silence can be consistent not only with

exercising one's constitutional right, but also with a lack of remorse. The latter is properly considered at sentencing because it speaks to traditional penological interests such as rehabilitation (an indifferent criminal isn't ready to reform) and deterrence (a remorseful criminal is less likely to return to his old ways). The line between the legitimate and the illegitimate, however, is a fine one. As we have recognized, "sometimes it is difficult to distinguish between punishing a defendant for remaining silent and properly considering a defendant's failure to show remorse in setting a sentence."

546 F.3d 828, 832 (7th Cir. 2008) (citations omitted).

Our line-drawing in this case is simplified by the fact Washington's Fifth Amendment challenge is to the sentence of 250 hours of community service. Unlike in *Iowa District Court*, this is not a situation in which the consequence (a determination that the defendant failed to complete sex-offender treatment and was not eligible for earned-time credits) bore a relationship to a legitimate penological purpose of the inquiry that the defendant refused to answer. We do not see how additional community service is related to a positive drug test or to an adverse inference drawn from a refusal to answer whether the test would be "clean or dirty." If Washington is still using drugs, it might be logical to refuse to defer judgment on the ground that Washington needs a more structured approach, but additional community service seems purely punitive. Neither the State nor the sentencing court contends Washington's 250 hours of community service serves a legitimate penological purpose connected to his refusal to answer whether he currently is using marijuana. We need not decide today whether a sentencing court could order drug treatment or rehabilitation or deny a deferred judgment based on defendant's refusal to answer whether a drug test would be positive. The court did defer judgment for Washington. Rather, we must decide on this record whether, as Washington argues, the court imposed

additional community service hours to penalize him for invoking his right to remain silent. If so, resentencing is required.

We accept as accurate defense counsel's account of the off-the-record colloquy and the plea and sentencing hearing, an account the judge did not dispute when it was restated on the record. The State had reached a plea agreement with Washington to recommend a deferred judgment on the possession of marijuana, first offense, with one year of probation, fifty hours of community service, a $500 civil penalty, and dismissal of the companion weapon and drug paraphernalia charges. According to defense counsel's statement on the record, "the court routinely doesn't impose any community service on deferred judgments, or it is anywhere from 50 to 100 hours." The State does not argue otherwise. The district court initially accepted the guilty plea and stated, "I'm going to defer judgment." The court next asked about Washington's employment and ability to pay the $500 civil penalty. So far, there is nothing out of the ordinary.

The trouble began when the sentencing judge asked Washington if he would be "clean or dirty" if he took a drug test. When defense counsel objected and asserted Washington's Fifth Amendment right to remain silent, the court reacted by immediately stating that he "didn't have to defer judgment" and Washington "can take the conviction." This raises a red flag. The proceedings continued on the record with defense counsel restating what had transpired moments earlier. The parties reiterated the terms of the plea agreement, and the court conducted an appropriate plea colloquy before accepting [again] Washington's guilty plea on the charge of the possession of a controlled substance, first offense. The court reexamined Washington's employment status and ability to pay the civil penalty.

The court then repeated the inquiry, "Mr. Washington, if you were to drop a urine sample today, would it be clean or dirty for marijuana?" Defense counsel instructed Washington not to answer and again invoked his right against self-incrimination, citing *Mitchell.* The court at that point granted Washington's request for a deferred judgment, noting his lack of prior criminal history. The court lowered the civil penalty by $185 to $315 "because Mr. Washington ha[d] not worked since the summer." But, then, the court imposed 250 hours of community service "in light of the nature of the offense." This was a five-fold increase over the fifty hours in the plea agreement. The sentencing court denied the 250 hours was imposed because Washington "invoked his constitutional right not to answer the Court's question." Yet, when challenged to "articulate why the Court feels 250 hours is necessary for Mr. Washington's case," the court answered, "it just believes that Mr. Washington would benefit by the community service, as would the community, in light of the deferred judgment being granted in this matter." The court offered no other explanation, despite the earlier request by the State that the "Court enunciate specifically its reasons for granting or denying a deferred judgment." The court articulated no rehabilitative or penological purpose for the 200 additional hours that was connected to Washington's possible drug use.

We find the sentencing court's cryptic explanation unsatisfactory in light of what had just transpired. The court did not have a positive drug test from Washington or any admission that he was using marijuana at that time. The court had previously indicated it would grant a deferred judgment. The court abruptly reversed course and stated it would instead enter a conviction when Washington first asserted his Fifth Amendment right to decline to answer the court's "clean or

dirty" question. We find that exchange reveals the court's intent to punish Washington for exercising his constitutional right. When challenged, on the record, the court then allowed the deferred judgment, but quintupled the community service over the fifty hours recommended by the State in the plea agreement. It would take Washington more than six, forty-hour weeks to discharge that community service. The $185 reduction in the civil penalty from $500 to $315 equates to ninety-two cents per hour for the extra 200 hours. There is no evidentiary support in the record for the district court's assertion that 250 hours of community service was in the "range" of other orders entered the previous day. In the absence of any other plausible explanation proffered, we find that the additional 200 hours was imposed in retaliation for Washington's invocation of his constitutional right against self-incrimination. Resentencing is required.

**IV. Conclusion.**

For the foregoing reasons, we deny Washington's motion to take judicial notice of other court files. We hold that the sentencing court improperly penalized Washington for invoking his Fifth Amendment right against self-incrimination. We, therefore, vacate the sentence and remand the case for resentencing.

**SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.**

All justices concur except Cady, C.J., and Mansfield, J., who dissent.

**CADY, Chief Justice (dissenting).**

I respectfully dissent. I would affirm the judgment of the district court.

The law properly cloaks judges with a presumption that they acted properly in the imposition of a sentence in a criminal case when faced with a claim that they used an improper sentencing consideration. *State v. Formaro,* 638 N.W.2d 720, 724 (Iowa 2002). This strong and venerable presumption is overcome only by proof that an improper consideration was used by the court. *See id.* (indicating an abuse of discretion will not be found unless the reviewing court is able to discern the decision was exercised on grounds that were clearly untenable).

When, as in this case, the judgment or sentence imposed by the district court was within the scope of discretion, the presumption of legality should shield the sentencing judge from an inference that an improper sentencing consideration could have been used. The invocation of a right under the Fifth Amendment by a defendant at the time of sentencing in response to an inquiry by the sentencing court about any criminal conduct committed by the defendant during the pendency of the case can become the basis of an inference of retaliatory sentencing, but it can also be a proper penological sentencing consideration. *Cf. State v. Iowa Dist. Ct.,* 801 N.W.2d 513, 527–28 (Iowa 2011). Yet, the imposition of a sentence by the court, following the invocation of the right, that merely falls within the high range of discretion does not establish proof of retaliation. The invocation, instead, remains an uncertain factor in the sentence.

In this case, the district court said it imposed a higher number of community service hours as a part of the deferred judgment granted to

the defendant because it felt the higher amount of community service hours was proper, not because it wanted to retaliate against the defendant for refusing to admit or deny any drug use. The defendant was unemployed at the time of sentencing, in possession of a firearm at the time of arrest, and rebuked all inquiries by the judge about his current use of drugs. There was simply no direct evidence of retaliation. Instead, it would appear the court wanted to make a very lenient form of punishment, which provides offenders with an opportunity to avoid the heavy burden of a record of a criminal conviction, more meaningful to the offender to better promote successful rehabilitation.

Without direct evidence of a retaliatory motive by the sentencing judge, the presumption of legality must prevail. The district judge deserves such a result, as does the time-honored presumption given by the law to judges in the performance of their work.

Mansfield, J., joins this dissent.