# IN THE COURT OF APPEALS OF IOWA

No. 24-0356
Filed January 23, 2025

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**COREY LYNN JACKSON,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.


　　The defendant appeals his sentence, contending the State breached the plea agreement and the district court considered improper factors at sentencing. **AFFIRMED AND REMANDED FOR ENTRY OF NUNC PRO TUNC.**


　　Jacob Heard of Iowa Defenders, PLLC, Clive, for appellant.

　　Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney General, for appellee.


　　Considered by Greer, P.J., and Buller and Langholz, JJ.

**GREER, Presiding Judge.**

Corey Jackson assaulted his girlfriend while acting as her caretaker after her hip surgery; he was charged with multiple crimes. He ultimately entered into a plea agreement with the State that gave both parties latitude to argue for "any legal sentence." Jackson pled guilty to three of the four charges, and he received three concurrent prison terms, for a total term of imprisonment not to exceed five years. Jackson now appeals this sentence, arguing the State breached the plea agreement by discussing serious injuries not proved or otherwise agreed to in the guilty plea.[1] He also contends the court used these unproven events as an improper basis for sentencing.

After careful consideration, we affirm the sentencing decision of the district court but remand and direct the district court to issue a nunc pro tunc order to correct an error in the written sentencing order to the appropriate charge for count IV, willful injury causing bodily injury.

**Background Facts and Proceedings.**

On February 16, 2023, A.K. was discharged from the hospital after hip surgery. Her boyfriend, Jackson, agreed that he would be her primary caretaker while she recovered from surgery. But as A.K. described it during her victim impact statement at the sentencing, following her hip surgery, their relationship soured

---

[1] Jackson contests his discretionary sentence imposed by the sentencing court; he has good cause to appeal. *See State v. Davis*, 971 N.W.2d 546, 554 (Iowa 2022) ("A sentencing error invariably arises after the court has accepted the guilty plea. This timing provides a legally sufficient reason to appeal notwithstanding the guilty plea." (citation omitted)). This includes his claim the State breached the plea agreement at the time of sentencing. *See State v. Boldon*, 954 N.W.2d 62, 69 (Iowa 2021).

again. And at the sentencing, even Jackson described the relationship as having a "toxic side." As A.K. lay recovering, Jackson began to physically abuse A.K. The abuse culminated on March 5, when A.K. was transported to the hospital and found to have swelling and bruising in her brain after Jackson hit her in the head. As described by her, A.K. underwent emergency, lifesaving medical care, including surgery, which left her permanently disfigured.

Law enforcement officials opened an investigation after A.K. was transported to the hospital with injuries on March 5. Ultimately Jackson was charged with four criminal counts. Jackson negotiated a plea agreement with the State that resulted in the dismissal of the first count and his pleading guilty to three counts: count II, domestic abuse assault with intent to inflict serious injury in violation of Iowa Code sections 708.2A(2)(c) (2023) and 708.1(2)(a); count III, wanton neglect of a dependent person in violation of section 726.28(1); and count IV, willful injury causing bodily injury in violation of section 708.4(2), amended down from the charge of willful injury causing serious injury. Under the terms of the plea agreement, both parties agreed:

> [Jackson] will plead to Counts II and III as charged as well as lesser included Willful Injury causing Bodily Injury in Count IV. Parties are free to argue for any legal sentence. [Jackson] will have to complete [Iowa Domestic Abuse Program] and a 5-year [no contact order] will issue. State to dismiss Count I.

Also contained in the plea agreement, Jackson admitted:

> I did the following:
> Count II: On February 16, 2023, in Polk County, Iowa, I did, without justification, hit my girlfriend, [A.K.], with whom I shared an intimate relationship, multiple times with the intent to cause her a serious injury.
> Count III (if applicable): On February 16, 2023, in Polk County, Iowa, I did knowingly act in a manner to cause [A.K.] physical harm

by assaulting her while acting as her caretaker following her surgery. At the time [A.K.] was dependent upon me to meet her needs as her caretaker.

Count IV (if applicable): On February 16, 2023, in Polk County, Iowa, I did, without justification, hit [A.K.] in the head multiple times with the intent to cause a serious injury causing her to suffer a bodily injury in the form of swelling and bruising to the head both internally and externally.

All three counts referenced February 16, 2023, as the date of the criminal acts, yet that was the date A.K. was released from the hospital following the hip surgery.

A separate sentencing hearing followed the plea proceeding after a presentence investigation (PSI) report was completed. During the sentencing hearing, the State offered seven photographs of A.K.'s injuries that were a result of Jackson's conduct on March 5. The State discussed the injuries and the events of March 5 when advocating for consecutive sentences. A.K. also gave a victim impact statement, alleging a pattern of abuse but focusing on the last and most serious incident of abuse on March 5. At the conclusion of the sentencing hearing, although the State aggressively argued for consecutive sentences, the district court sentenced Jackson to three prison terms, but determined they would be served concurrently to one another, for a total period not to exceed five years. To explain the decision to order concurrent sentences, the district court explained that it believed the charges related to "one incident on one day of incidents."

After the sentencing hearing, the district court issued a written sentencing order which listed count IV as "Willful Injury Causing *Serious* Injury." (Emphasis added.) Both the written plea agreement, which was also the filed guilty plea, and the court's oral pronouncement of Jackson's sentence labeled count IV as "Willful Injury Causing *Bodily* Injury." (Emphasis added.)

Asserting the State breached the plea agreement and the district court considered improper and unproven factors, Jackson appeals from the sentencing order.

**Standard of Review.**

An alleged prosecutorial breach of a plea agreement "is a species of sentencing error." *See State v. Jordan*, 959 N.W.2d 395, 399 (Iowa 2021) (citation omitted). We review an imposed sentence for correction of errors at law. *State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020). "To warrant reversal of a sentence, the record must show some 'abuse of discretion or some defect in the sentencing procedure.'" *State v. Patten*, 981 N.W.2d 126, 130 (Iowa 2022) (citation omitted). "Breach of a plea agreement is such a defect." *Id.*

Jackson's sentence, as imposed, falls within the statutory guidelines for sentencing. As a result, we review his second claim for an abuse of discretion. *See State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017) ("We review for an 'abuse of discretion,' our most deferential standard, 'if the sentence is within the statutory limits.'" (citation omitted)). Resentencing of a defendant is required if the sentencing court used an improper consideration, "even if it was merely a 'secondary consideration.'" *Boldon*, 954 N.W.2d at 73 (quoting *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000)).

**Discussion.**

Both challenges Jackson advances on appeal center on the March 5 assault when Jackson hit A.K., causing her to need medical intervention at the hospital, and his position that the State and the district court should not have considered those violent acts at sentencing. Jackson contends it was improper for the events

of March 5 to have been raised by the State at the sentencing hearing and considered by the district court in making the sentencing decisions because each of his three guilty pleas stated they involved his actions "[o]n February 16, 2023." But, after considering the record available to us, we find nothing improper with the actions of the State or the district court during the sentencing hearing.

There are several reasons supporting our determination to affirm that impact both challenges made by Jackson. First, the plea agreement was open for the State to argue any legal sentence and allowed the district court to consider the PSI report. Second, along with the PSI evaluator's characterization of the injuries as serious, Jackson confirmed his assaultive behavior on March 5 in his statement prepared for the PSI. Third, the sentence imposed by the district court was within the statutory limits. We apply these reasons to our determination over the challenges below.

**A. Breach of the Plea Agreement.**

In the plea agreement, the parties agreed that they were "free to argue for any legal sentence," and Jackson does not dispute that they could advocate for different punishments.[2] Thus, Jackson was aware the State could push for the harshest penalty. *See Boldon*, 954 N.W.2d at 71–72 (finding that bargaining for a contested sentencing hearing is distinguished from a case where a prosecutor technically complied with the plea agreement but expresses material reservations

---

[2] Jackson wanted the district court to grant him a deferred judgment with a term of probation imposed. The State argued for incarceration with the sentences to run consecutively. Instead, the district court opted to sentence Jackson to a term of imprisonment with the sentences running concurrent to each other.

about the plea agreement recommendation). Here, Jackson narrows the challenge that the State breached the terms of the plea agreement to:

> (1) [R]eferring to *serious injuries* suffered by [A.K.] despite admitting to only committing *bodily injuries*; (2) referr[ing] to injuries and abuse suffered by [A.K.] on March 5, 2023; and (3) by showing gratuitous and emotion inducing photos depicting [A.K.] after the injuries in relation to the incident occurring on March 5, 2023.

Returning to the record, the plea agreement allowed the district court to consider the PSI report. *See* Iowa Code § 901.5 (providing the sentencing court can examine "all pertinent information, including the [PSI] report and victim impact statements, if any."). The district court asked if any corrections were required to the report, and Jackson stated no. *See State v. McKinney*, No. 22-0708, 2023 WL 4104031, at *2–3 (Iowa Ct. App. June 21, 2023) (finding that the court was allowed to rely on "voluntarily-submitted" information in the PSI report, even when that information involved self-incriminating statements); *see also State v. Gordon*, 921 N.W.2d 19, 24 (Iowa 2018) ("A court has a right to rely on the information in the PSI [report] when the defendant fails to object to the information contained in the PSI [report]."). In that report, the PSI evaluator noted: "The defendant's actions in the current offense are *serious* and caused significant harm to the victim. Based on the facts of this case, incarceration could be warranted." (Emphasis added.) Thus, the PSI evaluator made the judgment from what Jackson reported to him that the injuries were "serious." As a part of the PSI report, Jackson's own version of the "incident" was "his side of the story of how *this crime* happened." (Emphasis added.) In his statement, without naming a date, Jackson detailed the events of March 5, which included A.K.'s trip to the emergency room on that date following his assault to her head. Now, by pointing to the date used in the plea agreement

(February 16) involving the crimes charged, Jackson attempts to distance himself from conduct that he described in the PSI report (that took place on March 5).

At the onset, we find Jackson's position to be disingenuous. In his appellate brief, he quotes from the trial information and admits that the February 16 date of occurrence in count IV, involving the serious injury charge, was incorrect and should have been March 5.[3] The February 16 date of occurrence remained in count IV when it was amended down to a bodily-injury charge, and yet as noted above, Jackson provided the March 5 details of the criminal "incident" in his PSI statement, which was what the district court had available to consider. Those admissions by Jackson included a description of other assaultive behavior, cumulating with the last event that sent A.K. to the hospital requiring surgery. Although Jackson now complains it was improper, A.K. discussed without objection how the "incident" happened and how it impacted her life. We have trouble understanding how Jackson can restrict consideration of his March 5 actions because of a date that appears to be incorrect as far as count IV is concerned. Otherwise, we can think of no explanation that Jackson pointed to the March 5 incident as the factual basis for his crime.

---

[3] Specifically, Jackson stated:
> Even though . . . Jackson did not plead guilty to willful injury causing serious injury, it *is important to note that the date listed for Count IV in the Trial Information (February 16, 2023) has the incorrect date as the incident that caused [A.K.] to suffer "serious injury" occurred on March 5, 2023* according to the minutes of testimony; [A.K.'s] statements made at the sentencing hearing, and the State's own comments made during the sentencing hearing.

(Emphasis added) (footnote omitted).

"The relevant inquiry in determining whether the prosecutor breached the plea agreement is whether the prosecutor acted contrary to the common purpose of the plea agreement and the justified expectations of the defendant and thereby effectively deprived the defendant of the benefit of the bargain." *State v. Frencher*, 873 N.W.2d 281, 284 (Iowa Ct. App. 2015). A "context-specific inquiry into the State's compliance with [the] promises made in a plea agreement" is necessary to evaluate if the State upheld its end of the bargain. *Patten*, 981 N.W.2d at 132. Jackson argues the "State's reference to the incident and injuries occurring on March 5, 2023, . . . was not contemplated by Mr. Jackson when he entered into a plea agreement and entered his guilty plea to three crimes committed exclusively on February 16, 2023." But, we first note that Jackson brought the March 5 incident into the court's focus by making it the subject of his PSI statement. And while the State did offer photographs of the bruising to A.K.'s head and the aftermath of her condition after surgery, Jackson did not object. In fact, he also mentioned the hospitalization and surgery of A.K. in his PSI statement. Finally, Jackson takes issue with the victim impact statement of A.K. and her detailed description of the assault and her injuries from March 5. "Allowing a victim to be heard at a defendant's sentencing provides an important avenue of closure for the victim while providing information to the sentencing court about the consequences of the defendant's criminal behavior." *State v. Schooley*, 13 N.W.3d 608, 616 (Iowa 2024); *see also* Iowa Code § 915.21. The statement allows the victim to detail their physical, emotional, or other effects of the offense on them to the court. *See* Iowa Code § 915.10(4). Over no objection, A.K. provided her statement related to the impact of the crimes against her, commenting specifically on the "incident"

Jackson referenced as the "story of how this crime" happened. And both Jackson and his counsel stood silently by while A.K. detailed the March 5 incident to the sentencing court, which we think suggests Jackson recognized that the acts of that day were the factual basis for his guilty pleas (regardless what date was listed in the guilty plea). *Cf. State v. Bearse*, 748 N.W.2d 211, 218 (Iowa 2008) (recognizing that an objection by counsel when the prosecutor breaches the plea agreement during sentencing "leads to a procedure that alerts the court to correct the taint by allowing the defendant to withdraw the plea or by scheduling a new sentencing hearing").

Use of the photographs of injuries and A.K.'s victim impact statement did not breach the spirit of the plea agreement because the State used the information to address the "incident" described by Jackson as the crime, referred to injuries inflicted on A.K. that the PSI evaluator described as "serious," and argued for a sentence that was within the statutory parameters as the plea agreement allowed. Jackson failed to establish a breach of the plea agreement.

**B. Consideration of Improper Sentencing Factors.**

Lastly, Jackson points to the district court's consideration of the March 5 incident and characterizes it as an improper sentencing factor. *See State v. Washington*, 832 N.W.2d 650, 659 (Iowa 2013) (reiterating that "a sentencing court may not rely upon additional, unproven, and unprosecuted charges unless the defendant admits to the charges or there are facts presented to show the defendant committed the offenses" (citation omitted)). "The standard of proof during the sentencing stage is lower than the standard used during trial."

*Grandberry*, 619 N.W.2d at 401. During the sentencing hearing, the district court stated:

> [A.K.] spoke of a series of incidents in the relationships. I need to base my sentence solely on the events of February 16th of 2023, which are the incidents that provided the factual basis for the charge. However, the actions of that day alone are sufficiently serious that prison is an appropriate remedy in this case. It is solely for medical intervention that [A.K.] did not die as a result of those injuries.

"To establish reversible error based on an improper sentencing factor, the defendant is required to show that the court was not just merely aware of the factor, but that it relied on the factor in determining its sentence." *State v. McCollaugh*, 5 N.W.3d 620, 627 (Iowa 2024). And it would appear from the district court's statement it only considered those events that established the factual basis for the plea. Yet it also referenced the injuries incurred from the March 5 assault during the hearing. And we cannot tell from this record whether the district court understood that Jackson's PSI description of the "incident" and the PSI evaluator's characterization of the injuries as "serious" happened because of the March 5 assault. We think the district court considered the events as described by Jackson in the PSI statement, assuming that what Jackson wrote provided the factual basis for the plea agreement Jackson entered—irrespective of the date. *See State v. Gonzalez*, 582 N.W.2d 515, 517 (Iowa 1998) (holding that the sentencing court did not abuse its discretion in considering defendant's dismissed charges in the plea agreement, where the defendant admitted the conduct in his PSI interview and did not object to the court's consideration of the PSI report). But even if the March 5 incident was separate from what the plea agreement referenced, with Jackson's admissions, "[t]here is no general prohibition against considering other criminal

activities by a defendant as factors that bear on the sentence to be imposed." *State v. Carter*, No. 13-0484, 2014 WL 69755, at *3 (Iowa Ct. App. Jan. 9, 2014) (alteration in original) (quoting *State v. Longo*, 608 N.W.2d 471, 474 (Iowa 2000)). And "when a challenge is made to a criminal sentence on the basis that the court improperly considered unproven criminal activity, the issue presented is simply one of the sufficiency of the record to establish the matters relied on." *Longo*, 608 N.W.2d at 474.

A district court's sentencing decision "is cloaked with a strong presumption in its favor," and Jackson must overcome the presumption of regularity on appeal. *See State v. Wilbourn,* 974 N.W.2d 58, 67 (Iowa 2022) (citation omitted). This is a heavy burden. *See Schooley*, 13 N.W.3d at 619. Jackson did not meet that burden, so his challenge to his sentence on this ground fails.

**Nunc Pro Tunc Order.**

As a final note, both parties agree Jackson pled guilty to willful injury causing bodily injury, and that the sentencing order is incorrect because in one place it reflected that Jackson was adjudged guilty of willful injury causing *serious* injury. At the sentencing hearing the district court correctly set out the terms of Jackson's plea agreement. Our caselaw is clear that "when a judgment entry incorrectly differs from the oral rendition of the judgment merely as a result of clerical error, the trial court holds the inherent power to correct the judgment entry so that it will reflect the actual pronouncement of the court." *State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995). The oral pronouncement accepting Jackson's plea to "Count IV, Willful Injury Causing Bodily Injury" controls. *See id.* at 528. To

correct this error, we remand to the district court to issue a nunc pro tunc order to correct the sentencing order.

**Conclusion.**

We reject Jackson's challenges to the sentencing decision of the district court and his assertion the State breached the plea agreement. And, we remand for the district court to correct the sentencing order consistent with this opinion.

**AFFIRMED AND REMANDED FOR ENTRY OF NUNC PRO TUNC.**