# IN THE COURT OF APPEALS OF IOWA

No. 24-0895
Filed September 4, 2025

**ALIVONTA DENEIL TURNER,**
    Plaintiff-Appellant,

**vs.**

**ARIANA ELIZABETH GARRELS,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Christopher Bruns, Judge.

A father appeals the district court's custody order granting the mother physical care and sole legal custody to their child.  **AFFIRMED.**

Alivonta De Neil Turner, Cedar Rapids, self-represented appellant.

Thomas J. Viner of Viner Law Firm, P.C., Cedar Rapids, for appellee.

Considered without oral argument by Tabor, C.J., Langholz, J., and Telleen, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**TELLEEN, Senior Judge.**

Alivonta Deneil Turner appeals the district court's custody order granting Ariana Elizabeth Garrels physical care and sole legal custody to their child. In addition to arguments regarding the custody and physical care issues, Turner argues that Iowa Code section 610.1 (2022), which provides the fee for ordering the transcript of the district court proceedings cannot be deferred, is unconstitutional and that requiring him to pay the transcript fee violates his constitutional rights. Because Turner has waived all issues he has raised on appeal,[1] we affirm the district court's order.

---

[1] Turner also filed a "motion to take judicial notice and supplement the record" during the pendency of this appeal. Although we are permitted to take judicial notice on appeal, *see State v. Washington*, 832 N.W.2d 650, 655 (Iowa 2013), Turner does not identify how Iowa Rule of Appellate Procedure 6.801 would authorize supplementing the record with the documents he seeks to introduce. And, in his motion, he does not describe those documents' relevance to this appeal beyond broad, conclusory assertions that the interceding events depicted in those documents "interfere[d] with [his] lawful visitation rights," "reinforced a pattern of unequal treatment and judicial bias," displayed "misuse of judicial power," and "demonstrate the chilling effect on a self-represented father." We accordingly deny Turner's motion.

Additionally, we note that Turner quoted at least one nonexistent case in his judicial-notice motion. It thus appears that Turner may have misused an artificial intelligence tool when preparing the motion. So we once again "stress that self-represented litigants and attorneys alike have a duty to independently verify the authenticity and veracity of all sources and assertions when relying on artificial intelligence tools to prepare trial or appellate court filings." *Luke v. State*, No. 24-1421, 2025 WL 2237311, at *1 (Iowa Ct. App. Aug. 6, 2025). Although a pro se litigant is not subject to the same ethical duties as an attorney, we expect attorneys and pro se litigants to "all . . . act with equal competence." *See Kubik v. Burk*, 540 N.W.2d 60, 63 (Iowa Ct. App. 1995).

## I. Background Facts and Proceedings

In February 2022, Turner petitioned to establish custody, care, visitation, and support over the child born of his relationship with Ariana Garrels.[2] He requested joint legal custody and shared physical care of the child, and that Garrels be responsible for attorney fees and court costs.

Trial was held on the petition in March 2024. In large part, that trial revolved around questions as to whether and to what extent Turner had engaged in acts of domestic assault against Garrels. The district court concluded that in or around 2017, "there was an assault on [Garrels] by [Turner]," Turner "made contact with [Garrels]'s face in some sort of offensive manner," he waved a knife at Garrels in "a threatening manner" and "made show of" carrying a pistol, and Turner "threatened [Garrels] with potential harm from the pistol." Turner was arrested following the incident with the pistol and disappeared from the child's life for months at a time while Garrels cared for the child.

Turner later filed the petition to establish custody, care, visitation, and support. A temporary matters hearing was held in May 2022, and the district court awarded Garrels physical care. Turner was granted supervised visitation, which eventually progressed to unsupervised visitation. Following the March 2024 trial, the district court concluded that Turner had spent much of the time under the temporary order attempting to undermine Garrels's role as a parent. He has also "engaged in a campaign to intimidate [Garrels] in regard to her relationship with

---

[2] Due to the lack of transcript in the record, we recite the facts and proceedings as described by the district court in its written ruling and as evidenced by the filings available in the case pleadings binder.

her current boyfriend" and "falsely accuse[d] [Garrels] of having sexual relations with her current attorney." The district court also found Turner insists that "[Garrels] should not have [the child] at the law office where [Garrels] works" because "the [law] office is a cultist type environment." And during the period under the temporary order, Turner escalated a disagreement over what swimsuit the child should wear to the point that law enforcement was called and forced to "broker a resolution in front of [the child]."

The district court expressly found that

> there is a history of domestic abuse of [Garrels] by [Turner]. Although [Turner] has been unable to carry out further acts of physical abuse since [Garrels] separated from him and since the temporary orders were modified to require exchanges at the Cedar Rapids Police Department, he did commit such acts before the separation. Further, his behavior since the temporary orders were issued, when he knew the court was watching, have reflected the efforts at intimidation and control that typify domestic abuse.
> Because [Garrels] has established a history of domestic abuse, the presumption in this case becomes one of sole legal custody to [Garrels] with visitation to [Turner].

The district court further found that the parties regularly disagree relating to healthcare and schooling issues. The court was skeptical the parties would improve their parenting relationship moving forward based on the "extremely acrimonious" period under the temporary order. Thus, it concluded, "[w]hen it comes to which parent should be awarded sole legal custody or primary care, the approximation rule overwhelming favors an award to [Garrels]." This is due to the fact that Garrels has always been the primary breadwinner and caretaker, and "[the child] is doing very well under [Garrels]'s care. She is performing very well at school other than a significant number of absences. She is relatively healthy. She appears to be very well adjusted."

In April 2024, the district court awarded Garrels sole legal custody and physical care of the child, with regular scheduled visitation granted to Turner. The district court also assessed monthly child support against Turner and made him responsible for court costs.

On April 30, Turner filed this appeal. In September, Garrels moved to dismiss Turner's appeal due to Turner's failure to order a transcript by the August 10 deadline to do so. Turner responded to Garrels's motion by asserting "good cause" for the delay due to financial hardship. He also moved for waiver of transcript costs. On October 3, our supreme court denied Garrels's motion to dismiss and ordered Turner to pay the transcript fee within fourteen days. Turner responded to the supreme court order by requesting the supreme court reconsider its denial of his request for a transcript fee waiver, broadly asserting a constitutional guarantee to access to justice regardless of financial circumstances.

In November, the supreme court then entered an order directing that this appeal "should proceed without preparation of the transcript," noting that under Iowa Code section 610.1, "the transcript fee cannot be deferred." The supreme court determined that "[i]n addition to any other arguments the appellant raises in his appellate brief, the parties shall brief the issue of whether requiring payment of the transcript violates the appellant's constitutional rights."

The parties subsequently filed their appellate briefs.

## II. Standard of Review

We review orders involving child custody and child support de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4–5 (Iowa Ct. App. 2020). We also review constitutional challenges de novo. *In re Marriage of Seyler*, 559 N.W.2d 7, 8

(Iowa 1997). "While we are not bound by the fact-findings of the district court, we give them weight, especially as to credibility determinations." *Thorpe*, 949 N.W.2d at 5.

### III. Discussion

Turner raises numerous issues on appeal. Several of his arguments are limited to topic headings, and all the issues he raises contain only cursory reference to legal authority. These two-to-three-sentence argument sections do not sufficiently facilitate our review. Vague assertions that the district court ruling "violates due process and equal protection" and "undermined the overall fairness of the trial" without citation to authority or reference to the record do not meaningfully identify findings of fact or conclusions of law with which Turner disagrees. *See* Iowa R. App. P. 6.903(2)(a)(8).

And "[t]o the extent he sufficiently formulates argument[s] for the first time in his reply brief, we do not consider [them]." *See Goebel v. Green Line Polymers, Inc.*, No. 18-1244, 2019 WL 4678169, at *3 n.8 (Iowa Ct. App. Sept. 25, 2019); Iowa R. App. P. 6.903(4) ("Issues may not be asserted for the first time in the reply brief."). Turner has divided his reply brief into (1) sections replying to the appellee brief, and (2) sections setting forth his primary arguments. That approach is contrary to our appellate rule governing reply briefs—that rule establishes that the reply brief is meant to "reply to the brief of the appellee," not to establish one's primary arguments on appeal. *See* Iowa R. App. P. 6.903(4).

Despite his waiver of all issues, we nonetheless do our best to interpret and address the arguments raised in the "Argument" section of Turner's appellant's brief without conducting his research for him.

### A. Constitutional Violations

Iowa Code section 610.1 provides that "[t]his section does not allow the deferral of the cost of a transcript." Turner argues that "[b]y taxing costs to [Turner] and requiring transcript fees" pursuant to Iowa Code section 610.1 that "he cannot afford, the final decree effectively denies meaningful appellate review," and "[i]mposing full court costs on [Turner], who lacks sufficient resources, violates due process and equal protection" under the United States Constitution. The lone legal authority Turner cites for both of these arguments comes from *M.L.B. v. S.L.J.*, 519 U.S. 102, 111–12 (1996).

Turner fails to delineate how *M.L.B.* supports his position beyond that "fundamental rights cannot be conditioned on wealth" and that "states cannot place insurmountable financial barriers on appeals involving parental rights." But we can easily distinguish *M.L.B.* from Turner's case. Quoting *Lassiter v. Department of Social Services*, 452 U.S. 18, 27 (1981), the *M.L.B.* Court recognized a "narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party's ability to pay court fees," particularly where "the object of the proceeding is 'not simply to infringe upon the parent's interest'" in the child, "but to end it." 519 U.S. at 117–18 (cleaned up). The Court expressly stated that it was answering the following question, "Does the Fourteenth Amendment require [the State] to accord [the appellant] access to an appeal— available but for her inability to advance required costs—*before she is forever branded unfit for affiliation with her children*?" *Id.* at 119 (emphasis added).

Here, unlike in *M.L.B.*, Turner was not at threat of having his parental rights terminated. Instead the district court was tasked with assessing child support,

custody, care and visitation over his child pursuant to chapters 600B and 598 of the Iowa Code. And the relief Turner requests is reversal of court costs, reassessment of child support, enforcement of the district court's communication orders,[3] and addressal of "ethical concerns regarding Garrels's counsel." The issues litigated and the relief sought by Turner fall far short of the concerns with financial access to judicial process contemplated by the *M.L.B.* court.

Even if we were to determine that Turner sufficiently raised this issue, we discern no violation of Turner's constitutional rights by requiring him to abide by the section 610.1 requirement to pay the cost of the district court transcript, nor in the district court's order that he be responsible for court costs.

### B. Other Arguments

Turner argues the district court "failed to protect the child's best interests" and "does not sufficiently address potential emotional harm to the child from extended alienation" by Garrels. Turner does not further describe what emotional harm the district court failed to address, how it failed to protect the child's best interests, or what relief he is seeking to correct those failures. This issue is waived.

Turner next contends that "the trial court relied heavily on disputed allegations of abuse dating to 2014 and 2017 without corroboration" and that the

---

[3] It is unclear to us exactly what relief Turner is requesting when he asks that we "enforce communication orders that protect [Turner]'s right to maintain a healthy relationship with the child." In its decree, the district court required that "[e]ach party shall cooperate and make every reasonable effort to allow reasonable communication by phone, Zoom, Skype, Facetime or similar video conferencing between the other parent and [the child]" and declined to require the use of a parenting application, recognizing that "[b]ecause the court has awarded [Garrels] sole legal custody, the need for communications has been significantly reduced." We decline to further speculate what type of relief Turner expects in this respect.

court may not "base custody findings primarily on uncorroborated hearsay." Turner fails to identify any specific hearsay statements, cite any part of the record, or make any argument in support of his interpretation of the facts. This issue is waived.

Turner also takes issue with the district court imputing him with an annual earning capacity of $31,200, arguing it "overlooked documented medical restrictions." He does not cite to any portion of the record supporting his claim that he is unable to earn the income imputed or that medical conditions inhibit his earning capacity to less than that assessed to him by the district court. This issue is waived.

Lastly, Turner alleges that "potential conflicts of interest" exist between Garrels and her attorney and argues the district court's failure to address "these issues undermined the overall fairness of the trial." He provides no explanation for any such alleged conflicts of interest. Turner has also waived this issue. And contrary to Turner's claim, the district court directly addressed his accusations of fraternization between Garrels and her attorney, finding his attempt "to falsely accuse [Garrels] of having sexual relations with her current attorney" to be borne out of a desire to control and intimidate Garrels.

Because all of Turner's arguments are waived or meritless to the extent they are properly raised, we affirm the district court's decree.

**AFFIRMED.**